UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

U.S. DISTRICT COURT
BANGOR, MAINE
RECEIVED AND FILED

2016 JUL 18 P 2: 55

BY_____
DEPUTY CLERK

JOHN JAY CONDON,
    *Plaintiff,*

v.                                               Case No.: _____

RODNEY BOUFFARD, WARDEN,
TROY ROSS, DEPUTY WARDEN,
JODY BRETON, DEPUTY COMMISSIONER,
    *Defendants.*
_____/

## JURY TRIAL DEMANDED

## VERIFIED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

### INTRODUCTION

1) This is a civil rights action filed by John Condon, a State Prisoner, for damages and injunctive relief under 42 U.S.C. 1983 alleging: (a) Loss of liberty due to excessive confinement in segregation in violation of the due process clause of the Fourteenth Amendment to the United States Constitution; (b) Denial of equal protection under the law in violation of the Fourteenth Amendment, (c) violation of Plaintiff's First Amendment right not to be retaliated against for filing a lawsuit and (d) violation of the Plaintiff's 8th Amendment in that the punishment he suffered was grossly disproportionate to the alleged offense.

### JURISDICTION

2) Jurisdiction of this Court is invoked pursuant to 28 U.S.C. 1331, 28 U.S.C. 1343 (a)(3).

## PARTIES

3) The Plaintiff, John Jay Condon, is a Maine State prisoner (MSP) who was housed at MSP until he was transferred by Defendant into the custody of the Florida Dept. of Corrections (F.D.O.C.) during the course of these events.

4) Defendant Rodney Bouffard at all times relevant is the Chief Administrative Officer and Warden of MSP.

5) Defendant Troy Ross at all times relevant is the Deputy Warden at MSP in charge of security and alternatively serves as the "Warden's Designee."

6) Defendant Jody L. Breton at all times relevant is the Deputy Commissioner of the Maine Department of Corrections (MDOC).

7) Defendants Bouffard, Ross and Brenton at all times relevant were acting under color of State law and are being sued in their individual and official capacities.

## EXHAUSTION OF REMEDIES

8) Plaintiff has exhausted his administrative remedies before filing this complaint.

## FACTS

9) On 3/5/14, Plaintiff was removed from the general population of MSP and placed in the segregated Special Management Unit (SMU) of MSP's "supermax" building on the allegation that he posed a threat to others.

## DENIAL of DUE PROCESS

10) On 3/10/14, Plaintiff was given an Administrative Segregation Review (ASR) and was told that staff had received reports from confidential informants that Plaintiff was planning to harm a MSP staff member.

11) The ASR board decides to place Plaintiff on Administrative Segregation (Ad. Seg.) status pending the results of an investigation by the Inner Perimeter Security (IPS) office of MSP (the IPS office is an investigative team that often acts on information given to them by confidential informants).

12) Plaintiff did not sign this first ASR and was not informed that he could appeal.

~ 2 ~

13) On 3/20/14, Plaintiff had his 2nd ASR and was told he would remain on Ad. Seg. status "pending the outcome of the IPS investigation". Knowing that investigations take time, Plaintiff did not appeal the decision.
14) At all times during all the ASR's Plaintiff received, he repeatedly stated that he had no intention of hurting anyone,
15) On 3/27/14, a third ASR was held and this time the board decided to release Plaintiff back into the MSP general population.
16) However, at the very bottom of the ASR status review minutes (MDOC form A-15.1-C-E, Sect. VI), there is a space where the Chief Administrative Officer or his designee has his own private review which can overrule the ASR Board's decision without comment.
17) On 3/25/14, Defendant Designee Ross used this Sect. VI power to overrule the ASR Board's decision to release Plaintiff.
18) There is no appeal to the Designee's decision and no opportunity for the Plaintiff to "hear and be heard" by Defendant Designee Ross.
19) At this critical point, Plaintiff realizes that the MDOC's Ad. Seg. Policy (No. 15.1) is faulty on its face and these ASR's Plaintiff is subject to are nothing more than a hollow formality in which the Defendants attempt to clothe themselves in compliance with meaningful due process.
20) In fact, under close inspection, there is no meaningful due process within these ASR's for the ultimate decision maker is actually Defendant Designee Ross who lies in wait at the bottom of the page. He, who is neither approachable nor appealable, acts as a kind of "Czar from afar."
21) On 4/1/14, Plaintiff received another ASR in which the same rote reiteration for holding him an Ad. Seg. Status was "pending the outcome of the IPS Investigation."
22) On 4/14/14, Plaintiff had his fifth ASR and again was told that he was being held "pending the outcome of the IPS investigation". However, this ASR Board made the surprising comment that Plaintiff would be "retained to Ad. Seg. to go on Administrative Control Pod".
23) Plaintiff inquired what the "Administrative Control Pod" was and was informed that it was a new unit being formed inside the SMU where inmates who qualified would be put in a special segregated unit for minimum of six months to a maximum of life.

24) Digesting this information, Plaintiff experienced heated emotional distress as he contemplated this apparent covert isolationist plan being formulated for him by the Defendants.

25) Plaintiff was <u>still being investigated</u> for alleged threats and had not been found guilty of any disciplinary infraction.

26) On 4/15/14, Plaintiff received an answer from an earlier inquiry he had made to Lt. Lidia Burnham, Chief of the IPS investigating team, as when the investigation on him would end so he could gain possession of his property. Burnham responded with the sobering remark of: "I am not aware of any pending investigations that your (sic) involved."

27) On 4/17/14, Plaintiff filed a grievance regarding this evidently bogus "IPS investigation" based on Lt. Burnham's reply.

28) On 4/28/14, Plaintiff's grievance was dismissed by the grievance review officer who stated the catch 22 reason that there is a "separate appeal procedure" for Plaintiff's grievance, meaning the very same ASR process he was grieving.

29) On 4/17/14 and 4/23/14, Plaintiff received his sixth and seventh ASR's which continued to state that he was being held in Ad. Seg. pending the outcome of the IPS investigation and that he will be continued confined there until a "possible" placement in the new Administrative Control Unit (ACU). Plaintiff's appeals were denied by Defendant Ross.

30) On 4/26/14, to fully exhaust his administrative remedies, Plaintiff filed a grievance regarding the ASR process which allowed Defendant Ross to act as an unapproachable and unappealable ultimate decision-maker. Plaintiff demanded that meaningful due process be met by allowing Plaintiff to "<u>hear and be heard</u>" by CAO Designee Ross.

31) On 4/28/14 Plaintiff's grievance was "dismissed" on same grounds that the very ASR process he was grieving was the appropriate venue to do same. There is no appeal to a "dismissal" of a grievance nor to the designee's ruling.

32) On 5/2/14 Plaintiff received his eight ASR and the board decided to continue to hold Plaintiff because "the threat still exists".

33) Plaintiff appealed the above eighth ASR on the grounds that the MDOC ASR process was nothing more than a "mere formality". Defendant Ross denied Plaintiff's appeal on 5/12/14.

34) Plaintiff's ninth ASR was held on 6/24/14. Plaintiff told the ASR board to process the charge of "threatening" or let him go. The board decided to retain Plaintiff "pending review to Administrative Control placement". Plaintiff's appeal was denied by Defendant Ross on 6/25/14.

35) On 7/20/14, Plaintiff sought relief from this unending confinement (now over 120 days) by filing a pro se petition for judicial review under the Maine State Administrative Procedures Act with the Knox County Superior Court in Rockland, Maine (Dock No. Ap-14-23).

36) Plaintiff received his tenth ASR on 7/30/14 in which he again pleaded not guilty to "threatening" charges and demanded speedy adjudication of the allegation. The ASR/board retained Plaintiff on Ad. Seg. status "pending review to Administrative Control Placement." Plaintiff's appeal was denied by Deputy Warden Ross.

37) Plaintiff's 11th ASR took place on 8/29/14 and resembled all the rest. Plaintiff's appeal was denied by the Defendant Ross.

38) On 9/8/14 Plaintiff's mandatory "Commissioner's Six Monthly Review of Ad. Seg. Status" was held. Deputy Commissioner Jody L. Breton held the review without the Plaintiff being in attendance. She approved the continued segregation of Plaintiff pending the "results" of the now six-month-old "investigation by IPS for possible threats toward staff". The Plaintiff was given no chance to defend himself or to "hear and be heard" by Deputy Commissioner Brenton.

39) On 9/20/14 Plaintiff wrote Deputy Commissioner Brenton complaining that no-one was giving him a chance to be heard.

40) On 9/30/14 Defendant Brenton wrote Plaintiff simply stating that since she takes the "Warden's opinion very seriously," that was enough for her to continue Plaintiff's Ad. Seg. Confinement.

41) Plaintiff had now been confined to administrative segregation for 210 days and not once had he the opportunity to meet with any one of the three ultimate decision makers (Bouffard, Ross, and Brenton) to personally explain his side of the "threatening" allegation to.

42) On 9/29/14, Plaintiff received his 12th ASR which was a virtual repeat of all the rest.

43) On 9/29/14 Plaintiff filed a grievance complaining that not once in the seven months Plaintiff had been held did the Warden visit him when it was MDOC

policy (No. 15.1) that "the Chief Administrative Officer, or Designee shall visit the living area where Ad. Seg. prisoners are housed weekly".

44) Plaintiff's grievance was "dismissed" on 10/14/14 with the statement that it was not Plaintiff's place "to hold the Warden to policy as relates to his duties".

## DENIAL OF EQUAL TREATMENT UNDER THE LAW

45) If it any time Plaintiff had been brought before a MSP disciplinary hearing board for adjudication of the "threatening" allegation and found guilty, the maximum amount of disciplinary segregation punishment time that could be administered was 20 days (MDOC policy No. 20.1 pp/13-14, 21). By Oct. 28, 2014 Plaintiff had spent <u>235 days</u> on administrative segregation pending the "results of the IPS Investigation" he was supposedly the focus of.

## RETALIATION FOR FILING A LAWSUIT

46) At 2:00 A.M. on October 28, 2014, without warning, a hearing, or Plaintiff's consent, the Defendants transferred Plaintiff over 1,000 miles away to the Florida Department of Corrections (FDOC).

47) Accompanying Plaintiff were sealed papers for the FDOC that boldly stated that he was in segregated status at MSP "due to recent threats <u>he made</u> to staff and another inmate" and that he was a "management problem <u>due to</u> assaultive behavior towards staff and other inmates".

48) As a result of these false statements told to the Florida authorities, the FDOC placed Plaintiff in a severely restrictive segregated "Close Monitoring" (CM) punishment program for one year because they feared to place him in their populations based upon the unproven statements Defendants made against the Plaintiff.

49) On 4/15/15, Plaintiff dismissed his State Administrative Procedure Act lawsuit against Defendants voluntarily and without prejudice because of the total lack of action by that Court. This failure by the Knox County Superior Court allowed the Defendants to punish Plaintiff by banishing him to one of the worst prison system in the U.S...Florida. A pure retaliatory move in response to Plaintiff's lawsuit.

50) As a further insult to injury, the Defendants removed $156.76 from Plaintiff's inmate account charging him to move his personal property to Florida when they were the ones who instigated the transfer.

## CLAIMS FOR RELIEF

### (A) FAILURE TO PROVIDE OR PROTECT DUE PROCESS

51) The failures of Defendant Bouffard, Ross, and Brenton to provide the opportunity for Plaintiff to "hear and be heard" by these three ultimate decision makers on his status during all the ASR processes, inclusive of the Commissioner's Six Monthly Review, denied Plaintiff due process of law in violation of the Fourteenth Amendment to the Untied States Constitution.

### (B) DELIBERATE INDIFFERENCE TO PLAINTIFF'S MENTAL HEALTH

52) These series of questionable events: the Maine State Prison's ASR process, the bogus "IPS investigation", the covert plan to place Plaintiff in an "Administrative Control unit," the drastic transfer to Florida, the taking of $156.76 out of his account to do so, Florida's refusal to believe Plaintiff's plea that he was <u>never convicted</u> of any misconduct in Maine and Florida's Department of Corrections sentencing him to a year of disciplinary segregation in a close management unit <u>based on</u> Defendant's false statements…All the above actions, and more, rendered to an "innocent until proven guilty" Plaintiff has caused serious emotional suffering and harm to Plaintiff's long standing history of manic depressive illness and a violation of this Eighth Amendment right to be free from cruel and hideous mental treatment.

53) As a direct result of the above, what was once a mild case of "restless leg syndrome" Plaintiff had prior to March 5th, 2014, has now become, because of the heavy strain on his now 68 year old nervous system, a full blown disability which requires medication four times per day to quell the violent leg spasms Plaintiff now suffers from daily. Thus, the Plaintiff has now acquired a physical injury/handicap at the hands of the Defendants.

### C. FAILURE TO BESTOW EQUAL TREATMENT

54) Defendants Bouffard, Ross and Brenton have treated Plaintiff radically different from other MSP inmates similarly charged or situated and by doing so have violated Plaintiff's Fourteenth Amendment right to equal protection of the law.

55) Plaintiff who was <u>never</u> found guilty of threatening, ended up spending 673[1] days of segregated confinement on an allegation, if it ever had been proven true, carried no more than 20 days segregation confinement (MDOC policy no. 20.1 pp. 13-14, 21).

### D. NEGLIGENT FAILURE TO ACT

56) Defendant Bouffard, Ross and Brenton owed Plaintiff, he being a ward under their total control and guardianship, the protection of all this United States Constitutional rights. Collectively, they have all failed to do so and this neglect has jettisoned the radical growth of his restless leg syndrome into a physical injury/handicap Plaintiff now suffers from day and night.

### E. RETALIATION FOR USING THE COURT SYSTEM

57) Plaintiff filed his Administrative Procedure Act (APA) lawsuit against Defendants on July 20, 2014. He chose the APA because it offered a more simplistic, speedier and cheaper avenue to receive results.

58) In the eight-month duration of that lawsuit, Plaintiff filed with the Court over 15 motion and reply motions plus a plethora of other APA related documents.

59) However, during that eight-month time frame, the Knox County, Superior Court Justice never even ordered the Defendants here to produce the record or specify the future course of proceedings.

---

[1] March 5, 2014 to Jan. 6, 2016 (when plaintiff was released from "close monitoring confinement" to open population at Zephyrhills Correctional Institution (FDOC).

60) That total lack of prompt judicial review allowed the Defendants the opportunity to retaliate against the Plaintiff for filing the lawsuit by sending him over 1,000 miles away to Florida in an effort, not only to punish him, but to exile him to a place he had never been to before.
61) Soon after transferring him, the Defendant motioned the Court to dismiss Plaintiff's APA lawsuit on the grounds that the Knox County Superior Court no longer had jurisdiction on the case, a very convenient move.
62) The Plaintiff, seeing "the writing on the wall", moved (and was granted) to voluntarily dismiss his APA petition without prejudice so he could seek justice with this Honorable Federal Court at a later date.
63) Collectively, these actions against Plaintiff here violated Plaintiff's First Amendment right not to be retaliated against for filing a lawsuit.

## RELIEF REQUESTED

WHEREFORE, Plaintiff requests that the Court grant the following relief:

A. Issue a declaratory judgment stating that:

1) Declare that Defendants Bouffard, Ross, and Brenton continually violated the Plaintiff's rights under the due process clause of the Fourteenth Amendment to the United States Constitution when they never allowed the Plaintiff to "hear and be heard" by the real ultimate decision makers on his administrative segregation confinement.
2) Declare that the ASR process of the MDOC and MSP violated the due process clause of the Fourteenth Amendment in that it is nothing more than a hollow formality when the real ultimate decision maker lies elusively at the bottom of the page of the ASR minutes ready to overrule the findings of the ASR board with a stoke of his silent pen.
3) Declare that Defendant Brenton violated the Plaintiff's Fourteenth Amendment right to due process when she held the "Commissioner's Six Monthly Review of Ad. Seg. Status" without allowing the Plaintiff to be present nor giving him an opportunity to "hear and be heard".

4)     Declare that Defendants Bouffard, Ross and Brenton violated Plaintiff's Fourteenth Amendment right when they denied him the equal protection of the laws and policies within their jurisdiction.

5)     Declare that Defendants Bouffard, Ross and Brenton violated Plaintiff's First Amendment right not to be retaliated against for filing a lawsuit when they sent Plaintiff over 1,000 miles away into the custody of the Florida Department of Corrections.

6)     Declare that Defendants Bouffard, Ross and Brenton failed to protect Plaintiff's constitutional rights, he being a ward under their total guardianship, and that these collective failures and mean spirited actions were responsible for Plaintiff being kept in segregated confinement for 673 days on an allegation (never proven) of "threatening" and have violated Plaintiff's Eighth Amendment right to be free from cruel and hideous treatment.

B.     ISSUE AND INJUNCTION ORDERING DEFENDANTS BOUFFARD, ROSS AND BRENTON OR THEIR AGENTS TO:

1)     Inform the FDOC that MSP misspoke when they wrote that Plaintiff exhibited "assaultive behavior towards staff and other inmates" and that Plaintiff has made "recent threats…to staff and another inmate."

2)     Declare to the Florida Department of Corrections that Plaintiff <u>had never been convicted</u> of any assaultive or threatening behavior while he was in their custody.

3)     Transfer Plaintiff back to MSP.

C.     AWARD COMPENSATORY DAMAGES JOINTLY AND SEVERALLY AGAINST:

1)     Defendants Bouffard, Ross and Brenton for the punishment and emotional injuries resulting from their denial of due process in connection with Plaintiff's ASR process inclusive of the Commissioner's Six Monthly review. By this demand, Plaintiff seeks compensatory damages for the loss of privileges and quality of life in his prison living conditions and the loss of the limited <u>liberty</u> enjoyed by prisoners in general population within MSP. Since the Defendants removed the Plaintiff from general population on March 5, 2014, he was continuously confined in various cell of roughly 60

square feet for over 23 hours per day for 673 days and deprived of most of his personal property. Plaintiff lost the <u>liberties</u> he enjoyed at MSP, which included, but not limited to, the ability to work, attend educational and vocational programs (inclusive of the college course he was taking at the time) and other lost <u>liberties</u> such as the simple enjoyment of listening to his radio, associating with other prisoners, attending outdoor recreation in a congregate setting with the ability to engage in sports and other congregate activities such as recreational pool, horseshoes and ping pong. Further, Plaintiff lost the <u>liberty</u> of attending meals with other prisoners, religious services, special musical events, access to a large library where he had the use of typewriters, word processors, a copy machine and ready access to legal materials along with a <u>Westlaw</u> computer. Plaintiff also lost <u>liberty</u> of attending club functions he was a member of, art classes, a weight lifting room, jogging on an outdoor track, indoor gym usage and the use of microwave ovens in his living quarter. Plaintiff no longer had a chair to sit in, a decent pen, or a toothbrush longer than two inches. Plaintiff separately and in addition, seeks compensatory damages for the mental or emotional distress resulting from his prolonged confinement in segregation <u>without</u> due process of law which he is entitled to because of the physical injury/handicap he sustained as explained earlier.

2) Defendants Bouffard, Ross and Brenton for the punishment and emotional injury resulting from sending Plaintiff to Florida in retaliation for his filing a lawsuit in violation of Plaintiff's First amendment rights and for the <u>untruths</u> they related to the FDOC which resulted in the further 438 days of segregated confinement at the hands of the FDOC because Florida feared letting him in their general population <u>based upon</u> the untruths Defendants related.

3) Defendants Bouffard, Ross and Brenton for denying Plaintiff his Fourteenth Amendment right to equal protection of the law in that Plaintiff was treated <u>drastically different</u> than other Maine State prisoners similarly situated.

4) Defendants Bouffard, Ross and Brenton for their collective failure to act to protect Plaintiff's First, Eight and Fourteenth Amendment rights, he being a ward under their total guardianship.

D.  AWARD PUNITIVE DAMAGES IN THE FOLLOWING AMOUNTS:
1)  $150,000 against Defendant Bouffard.
2)  $150,000 against Defendant Ross.
3)  $150,000 against Defendant Breton.

E.  GRANT SUCH OTHER RELIEF AS IT MAY APPEAR PLAINTIFF IS ENTITLED TO:

1)  Including of the costs of this action and any attorney fees the Plaintiff may encounter.
2)  Inclusive of the $156.76 Defendant took out of Plaintiff's inmate account as a "charge to send his property to him".

Dated this 18th day of July 2016.

Respectfully submitted,

/s/ _____
John Condon, DC # 148840

Pursuant to 28 U.S.C. §1746, I DECLARE UNDER THE PENALTY OF PERJURY that the facts stated in this complain are true to my knowledge and that any facts stated on information and belief are true to the best of my knowledge and belief.

Respectfully submitted,

/s/ _____
John Condon, DC # 148840
Zephyrhills Correctional Institution
2739 Gall Boulevard
Zephyrhills, FL  33541

## CERTIFICATE OF SERVICE

I CERTIFY that I, as Plaintiff, complied with all the requirements listed within rule 4(d)(1)(a) (A-G), F.R.Cv. P. by placing these documents in the hands of an institutional official for mailing to:

✶ Rodney Bouffard, Warden,  → *New 7/18/16 Address*
Maine State Prison            RODNEY BOUFFARD
807 Cushing Rd.               SUPERINTENDANT
Warren, Maine 04864           RIVERVIEW PSYCHIATRIC CENTER
                              250 ARSENAL ST.
Troy Ross, Deputy Warden      AUGUSTA, ME 04330
Maine State Prison
807 Cushing Rd.
Warren, Maine 04864

Jody L. Breton, Deputy Commissioner
Maine Department of Corrections
State House Station #111
August, Maine 04111

On this 18th day of July, 2016.

/s/ _____
John Condon, DC # 148840
Zephyrhills Correctional Institution
2739 Gall Boulevard
Zephyrhills, FL 33541

~ 13 ~