UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| JOHN JAY CONDON, ) | |
| ) | |
| Plaintiff ) | |
| ) | |
| v. ) | Civil No. 16-372-JAW |
| ) | |
| RODNEY BOUFFARD, et al. ) | |
| ) | |
| Defendants ) | |

MOTION TO DISMISS

The plaintiff, currently a prisoner in the custody of the Florida Department of Corrections (FDOC) after a transfer from the Maine Department of Corrections (MDOC), filed a civil rights lawsuit against three MDOC officials stemming from his segregated confinement in both states. In his suit, the plaintiff claims violations of 14th Amendment due process and equal protection, the 1st Amendment protection against retaliation, and the 8th amendment prohibition on cruel and unusual punishment. The defendants hereby file their motion to dismiss for failure of plaintiff to state a claim upon which relief may be granted.

Turning first to the plaintiff's due process claim, in *Sandin v. Conner*, 515 U.S. 472, 484 (1995), the Supreme Court held that due process does not apply to a prisoner's situation (and, thus, there can be no due process violation) unless what is at stake is an "atypical and significant hardship … in relation to the ordinary incidents of prison life." In *Wilkinson v. Austin*, 545 U.S. 209 (2005), the Court offered some guidance on the type of prison conditions that might constitute an atypical and significant hardship and thus give rise to a liberty interest protected by due process. In that case, prisoners in the "Supermax" unit of the Ohio State Penitentiary were not only kept in single cells for 23 hours a day, with cell lights left on at all times, exercised in a

small indoor room, and ate meals in their cells, but they were also deprived of almost all human contact (the cells having been sound proofed so that prisoners could not talk to one another). Their placement was indefinite and after an initial 30-day review, it was reviewed just annually. Placement in that unit also deprived these prisoners of eligibility for parole. 545 U.S. at 214, 223-224. The Court made it clear that what made placement in that housing unit different from other segregated housing (the latter of which would not trigger due process protection) was the especially severe limitations on human contact, the duration of the confinement, and the loss of parole eligibility. The Supreme Court held that these conditions, *taken together*, constituted an atypical and significant hardship. 545 U.S. at 224 (emphasis added).

As described by the plaintiff himself, his segregated confinement, whether in Maine or in Florida, did not trigger due process protections. He sets forth no allegation of being deprived of human contact (or of lights being left on or of exercise being confined to a small indoor space for that matter either), just of being deprived of the "liberty" to engage in congregate activities and the other amenities of being in general population. See typewritten part of complaint, pp. 10-11, ¶ C.1. For a State of Maine prisoner, there is no parole eligibility to lose. As for the duration of confinement, the only allegation regarding it being indefinite comes with respect to a housing unit the plaintiff did *not* get placed in, the "Administrative Control Pod." See typewritten part of complaint, p. 3, ¶¶ 2-23, p. 4, ¶ 29, p. 5, ¶ 4. Further, his own complaint makes it clear that, at least as far as his segregated confinement in the MDOC goes, the plaintiff received more than enough reviews, specifically twelve in under eight months. See typewritten part of complaint, p. 2, ¶¶ 9-10, p. 5, ¶ 42, p. 6, ¶ 46. He makes no allegations with respect to the number of reviews he received during his segregated confinement in the FDOC. Indeed, he is not claiming that his

due process rights were violated with respect to his segregated confinement in the FDOC, which has now ended.[1]

Rather his claims are that defendant Maine State Prison Deputy Warden Ross violated his due process rights by not giving him hearings on his appeals of some of the Maine State Prison administrative segregation review board's decisions to retain him in administrative segregation and that defendant MDOC Deputy Commissioner Breton violated his rights when she did not give him a hearing as part of a six month review of his status, by which he means meetings for him to personally explain his side.   See typewritten part of complaint, p. 3, ¶ 18, p. 4, ¶ 30, p. 5, ¶¶ 38, 41, p. 7, ¶ 51.  (Although the plaintiff complains that defendant former Warden Bouffard also did not meet with him, the plaintiff does not allege that Bouffard made any decisions about his status, and the basis of his complaint in this regard is an MDOC policy, not the constitution – see typewritten part of complaint, pp. 5-6, ¶¶ 41, 43.)

However, even if due process were to apply here, which, as discussed above, it does not, there is no due process right to have a hearing in front of an administrative appeal authority.  In *Wilkinson*, 545 U.S. at 228-229, the Supreme Court, although noting that *Sandin* had abrogated the Court's prior holdings on when due process is triggered, held that the procedural protections set out in *Hewitt v. Helms*, 459 U.S. 460 (1983) were sufficient in the administrative segregation context.   In *Hewitt*, the Court had held that a prisoner was entitled only to notice and a chance to present his (or her) views, and it specifically stated that, as was the situation in *Hewitt* itself, a written statement by the prisoner was sufficient for this purpose.  459 U.S. at 464-465, 476-477. Here, plaintiff was allowed to make statements at every review board and was also allowed to file appeals to the Deputy Warden.  See, e.g., typewritten part of complaint, p. 3, ¶ 14, p. 4, ¶¶

---

[1] The plaintiff says he has been in the general population of a FDOC facility since January 6, 2016.  See typewritten part of complaint, p. 8, n. 1.

28, 29.[2] As for the Deputy Commissioner, it appears that her review was a separate process and certainly not one mandated even if due process were to apply here.

The plaintiff's equal protection claim is equally without merit. His claim in this regard is that if he had been brought before a disciplinary hearing board, instead of an administrative segregation review board, the most time he could have spent in MDOC disciplinary segregation would have been 20 days, instead of the 235 days he spent in MDOC administrative segregation or the combined 673 days he spent in segregated confinement in both states. See typewritten part of complaint, p. 6, ¶ 45, p. 8, ¶ 55. He then makes the conclusory statement that he has been treated differently from other similarly situated Maine State Prison inmates. See typewritten part of complaint, p. 8, ¶ 54.

However, this legal conclusion is not sufficient. *Ashcroft v. Iqbal*, 556 U.S. 662, 677-681 (2009), since there is not one factual allegation to support that other prisoners suspected of his behavior have not been put in administrative segregation. Moreover, he is not alleging he has been treated differently from other prisoners because of a "suspect class," such as race. He is not alleging, at least not with regard to the failure to bring him before a disciplinary board but instead place him in administrative segregation, an intent on the part of any defendant to inhibit or punish his exercise of a constitutional right[3] or a malicious or bad faith intent on the part of any defendant to injure him. *See Aponte-Ramos v. Alvarez-Rubio*, 783 F. 3d 905, 908 (1st Cir. 2015). Thus, equal protection clearly does not apply here.

---

[2] Although the plaintiff alleges he was not informed of his "right" to appeal at his first review, he knew about it by the second review. See typewritten part of complaint, p. 2, ¶ 12, p. 3, ¶ 13. This was only 15 days after he was first placed in administrative segregation. See typewritten part of complaint, p.2, ¶ 9, p 3, ¶ 13. In any event, he says he chose not to avail himself of the chance to appeal at that early stage. See typewritten part of complaint, p 3, ¶ 13.

[3] The plaintiff is making such an allegation, conclusory though it may be, with respect to his transfer to the FDOC. This is something which will be discussed in the text below, as it does not implicate his equal protection claim, but instead his claim that he was retaliated against for filing a state court lawsuit.

As for the plaintiff's cruel and unusual punishment claim, he does not allege conditions while he was in segregated confinement that would rise to the level of such punishment.[4] The plaintiff's allegations come nowhere near the conditions described in *Hutto v. Finney*, 437 U.S. 678 (1978), the only U.S. Supreme Court case dealing with the Eighth Amendment's limits on "isolation" (filthy, overcrowded, windowless cell with no furniture other than a source of water and a toilet that could only be flushed from outside the cell, with violence and risk of disease rampant, and prisoners receiving meals of "grue" totaling fewer than 1,000 calories a day). The mere fact of being deprived of the amenities of being in general population, which is all that the plaintiff here alleges, does not mean there is cruel and unusual punishment. Under *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981), there must be an allegation of deprivation of the "minimal civilized measure of life's necessities," such as adequate food, clothing, shelter, or medical care. Further, although length of time in segregation can be a factor, the federal courts have routinely held segregated confinement, even for many years, is not, per se, cruel and unusual. See, e.g., *Jackson v. Meachum,* 699 F.2d 578, 580-84 (1st Cir.1983).

The same is true even if segregated confinement leads to mental health issues (at least so long as it does not cause extreme deterioration of mental health). *Id.* Here, there is no factual allegation to support that the plaintiff has suffered extreme deterioration in his mental health due to being in held in segregation. The plaintiff does not, for example, allege that he attempted to commit suicide while in segregation. As for plaintiff's claim that, due to the "heavy strain" on his nervous system, he suffered an exacerbation of a pre-existing physical condition, restless leg syndrome, such that he now needs more frequent medication to quell violent leg spasms (see the

---

[4] The plaintiff complains of other alleged events that he says, along with being placed in segregated confinement, violated the Eighth Amendment due to the "serious emotional suffering" they caused him. See typewritten part of complaint, p. 7, ¶ 52. However, none of them qualify as "cruel and unusual punishment" as any court has described it.

typewritten part of the complaint, p. 7, ¶¶ 52-53), this is not the type of result, even if true, that would be sufficiently serious to meet the *Rhodes* standard.  In addition, there is no allegation that any of the defendants was deliberately indifferent to the alleged effects on the plaintiff's mental and/or physical condition.  *See Wilson v. Seiter*, 501 U.S. 294, 299-304 (1991).

Finally, there is the matter of the plaintiff's retaliation claim.  According to him, not quite eight months after he was first placed in segregated confinement, the defendants transferred him to the FDOC in retaliation for his having filed, more than three months earlier, a petition in a Maine state court for a judicial review of his placement in segregation.  See typewritten part of complaint, p. 5, ¶ 35, p. 6, ¶ 46.  Also according to the plaintiff, they made "false statements" at the time of the transfer as to why he had been placed in MDOC segregation, based on which the FDOC placed him in segregation there.  See typewritten part of complaint, p. 6, ¶¶ 47-48.

However, the plaintiff does not make the factual allegations required by *Iqbal,* 556 U.S. at 677-681.  He is relying on the fact that he was never "convicted" of the behavior that led to his placement in segregation to support his assertion that the alleged statements were false (see the typewritten part of the complaint, p. 7, ¶ 52, p. 8, ¶ 55), even though placement in administrative segregation need not be based on a finding of guilt. See *Hewitt v. Helms*, 459 U.S. at 474.  Also, the plaintiff does not even so much as claim that any defendant knew that the alleged statements were false.

Similarly, he does not set out all the factual allegations necessary to support a retaliation claim.  Although he does allege that he had engaged in constitutionally protected conduct (filing the state court petition), and a transfer might be the type of adverse action sufficient to deter a person of ordinary firmness from undertaking more activities protected by the First Amendment, the plaintiff does not put forth any factual allegation to show a causal connection between the

6

two.  See *Hannon v. Beard*, 645 F.3d 45, 48 (1st Cir. 2011).  There is not even an allegation to support that any of the defendants in this case, as opposed to the MDOC as an entity (and its attorney),[5] knew that he had filed the petition for judicial review.

Therefore, for all the reasons stated above, the defendants ask that the court dismiss this case for failure of the plaintiff to state a claim upon which relief may be granted.


Dated:  October 11, 2016                         /s/ Diane Sleek
                                                 DIANE SLEEK, AAG
                                                 Office of Attorney General
                                                 Six State House Station
                                                 Augusta, ME 04333-0006
                                                 Tel. (207) 626-8800


CERTIFICATE OF SERVICE

I hereby certify that, on this date, I caused one copy of this filing to be served upon John Jay Condon, Zephyrhills Correctional Institute, 2739 Gall Blvd., Zephyrhills, FL 33541, by having the same deposited in the United States Mail, postage prepaid.


Dated:  October 11, 2016                         /s/ Diane E. Sleek
                                                 DIANE E. SLEEK, AAG

---

[5] The respondent in such a petition is the agency, not an individual.