# United States District Court
## District of Maine

John Jay Condon,
    Plaintiff

v.

Rodney Bouffard, et al.,
    Defendants

Civil No:

16-372-JAW

## Opposition to Defendants October 11, 2016, Motion to Dismiss.

Plaintiff pro se, a Maine State prisoner and United States citizen from birth, has alleged the Defendants here have violated his U.S. Constitutional rights; to wit:

(1), Forced his excessive confinement (and thus loss of his limited liberty) for 673 days in two Maximum Security segregation buildings in two states without a conviction of wrongdoing and w/out a truly meaningful due process of law as guaranteed by our 14th Amendment to the United States Constitution;

(2) Denied him Equal protection and treatment under the law and under the rules, regulations and policies of the Maine Dept. of Corrections ("MDOC") in violation also

OF THE 14TH AMENDMENT;

(3) RETALIATED AGAINST THE PLAINTIFF for EXERCISING HIS 1ST AMENDMENT RIGHTS AS A CITIZEN of THE UNITED STATES WHEN HE filed A LAWSUIT IN STATE COURT AGAINST THE DEFENDANTS; and

(4) SUFFERED HIM TO EXPERIENCE HIDEOUS, CRUEL AND UNUSUAL TREATMENT BOTH MENTALLY① AND PHYSICALLY② BY BEING SOLELY RESPONSIBLE FOR HIS 673 DAY CONFINEMENT IN TWO MAXIMUM SECURITY SPECIAL HOUSING UNITS ("SHU's") OR

①
MENTALLY BY THE PLAINTIFF'S ABSORPTION of THE BOATLOAD of BLATENTLY SLY, SUBTLE, AND ILLEGAL METHODS DEFENDANTS USED TO KEEP PLAINTIFF ON A SEGREGATED STATUS AND THE EXTREME FRUSTRATIONS, ANXIETIES AND ANGER PLAINTIFF HAD TO CONTROL WHICH IN TURN WREAKED HAVOC ON HIS RESTLESS LEG SYNDROME AILMENT CATAPULTING IT INTO THE SERIOUS PHYSICAL LEG SPASMS
② HE EXPERIENCES TO THIS DAY.
PLAINTIFF WAS SEVERELY BEATEN BY ANOTHER PRISONER HE WAS FORCED TO CELL WITH SOON AFTER HIS ARRIVAL AT THE RECEIVING & MEDICAL CENTER ("RMC") AT LAKE BUTLER, FLORIDA. RMC HAS BRUTAL FACIAL PICTURES of PLAINTIFF TO PROVE THIS ALLEGATION. AT OTHER TIMES WHILE ON CLOSE MONITORING SEGREGATION STATUS IN FLORIDA, PLAINTIFF WAS FORCED TO BE CELLED WITH PRISONERS WHO WERE NOT ONLY AGRESSIVELY PSYCHOTIC, BUT ALSO PREDATORY.

SEGREGATION UNITS IN TWO STATES WHEN HE WAS NEVER FORMALLY CHARGED OR CONVICTED OF ANY MISCONDUCT.

PLAINTIFF HAS SUPPLIED AN ABUND-ANCE OF FACTS IN HIS ORIGINAL THIRTEEN (13) PAGE COMPLAINT, TO MAKE HIS ACCUSATIONS VERY "PLAUSIBLE;" CERTAINLY ENOUGH TO MEET THE STANDARDS SET FORTH IN BELL ATLANTIC CORP. V. TWOMBLY, 550 U.S. 544, 555, 127 S. CT. 1955 (2007) ("COMPLAINT MUST INCLUDE ENOUGH FACTUAL MATTER TO MAKE THE CLAIMS PLAUSIBLE"). THE SUPREME COURT WENT ON IN ASHCROFT V. V. IQBAL, 129 S. CT. 1937, 1939 (2009) TO HOLD THAT THE "PLAUSIBILITY" REQUIREMENT "DEMANDS MORE THAN UNADORNED THE-DEFENDANT-HARMED-ME ACCUSATIONS." PLAINTIFF BELIEVES HE HAS MORE THAN MET BOTH OF THOSE REQUIREMENTS.

IN ADDITION, PLAINTIFF HAS AN ABUN-DANCE OF RELEVANT BLACK AND WHITE DOCUMENTS (ALBEIT "EVIDENCE"), TO BACK UP HIS FACTUAL CLAIMS IN HIS ORIGINAL COMPLAINT AND HERE IN HIS OPPOSITION TO DEFENDANT'S MOTION TO DISMISS, HE WILL REVEAL A SMALL BUT DAMAGING SAMPLING OF THE AMMUNITION HE CARRIES ALONG WITH APPROPRIATE LEGAL CITATIONS.

(1) — THE DUE PROCESS CLAIMS —

PLAINTIFF HAS READ AND UNDERSTANDS THE

STRINGENT STANDARDS THE Supreme Court
SET FORTH IN SANDIN V. CONNER, 515
U.S. 472, 484, 115 S.CT. 2293, 132 L.Ed.2d
418 (1995) FOR PRISONERS filing DUE
process CLAIMS. THE Court STATED
THAT THE confinement OR RESTRAINT
AT ISSUE MUST CREATE AN "ATYPICAL AND
SIGNIFICANT HARDSHIP... IN RELATION TO
THE ORDINARY INCIDENTS of PRISON LIFE."

  IT IS IMPORTANT HERE TO CALL to
MIND THAT THE PLAINTIFF IN THE SANDIN
CASE SPENT LESS THAN 30 DAYS IN A
SPECIAL HOUSING UNIT ("SHU"). HERE,
PLAINTIFF CONDON SPENT A TOTAL of 673
DAYS IN SPECIAL SEGREGATED confinement
UNITS (MAINE DEPT. of Corrections "super-
MAX" and FLORIDA'S DEPT. of Correction's
"CLOSE MANAGEMENT") (BASICALLY BOTH
"SHU'S"). CONDON SPENT HIS CON-
finement IN THESE High SECURITY
UNITS BASED UPON THE WORD OR INFOR-
MATION given TO THE ADMINISTRATION
BY A fellow INMATE WHO WAS A CONFI-
DENTIAL INFORMANT (and who might HAVE
Simply HAD A "grudge" AGAINST CONDON).
"THE DURATION of PLAINTIFF'S SHU CON-
finement TAKES ON EVEN GREATER
Weight when one Considers THE REASON
why plaintiff WAS IN SHU IN THE first
PLACE." COX V. MALONE, 199 F.Supp.
135, 143 (S.D.N.Y. 2002).

  673 DAYS... THAT'S OVER TWENTY
TIMES THE AMT of TIME THE PLAINTIFF IN
THE SANDIN CASE SPENT. 235 DAYS IN

MAINE'S "SUPERMAX," THEN 438 IN FLORIDA BASED UPON THE FALSE REPORTS REI CONDON THE DEFENDANTS GAVE TO THE FLORIDA DEPT. OF CORRECTIONS ("FDOC") WHERE THEY CLAIMED ON PAPER (SEE APPENDIX A) THEY HAD CONVICTED CONDON OF BOTH "THREATENING" AND "ASSAULTIVE" BEHAVIOR.

PLAINTIFF CONDON WAS NEVER CONVICTED OF EITHER OF THESE CHARGES UNLESS THE DEFENDANTS CONSPIRED WITH OTHERS TO CONVICT HIM WHEN HE WAS NOT THERE. THESE REPORTS PERSUADED THE FDOC TO EVENTUALLY EXTEND CONDON'S CONFINEMENT ANOTHER 438 DAYS DESPITE CONDON'S FUTILE PROTESTATIONS HE WAS STILL "UNDER INVESTIGATION" BY THE DEFENDANTS (SEE APPENDIXS' $B_1$, $B_2$ & $B_3$). "WHATEVER THE POINT IS BEYOND WHICH CONFINEMENT IN HARSH CONDITIONS CONSTITUTES ATYPICALITY, A PRISON OFFICIAL MUST NOT BE PERMITTED TO EXTEND SUCH CONFINEMENT BEYOND THAT POINT WITHOUT ACCORDING PROCEDURAL DUE PROCESS." SEALEY V. GILTNER, 197 F.3d 578, 587 (2nd Cir. 1999).

AS HE HAS EXPLAINED ONCE IN HIS ORIGINAL COMPLAINT AND WILL DO SO AGAIN LATER HERE, PLAINTIFF STEADFASTLY MAINTAINS HE NEVER HAD ANY MEANINGFUL DUE PROCESS OF LAW WHILE IN MAINE FOR SEVERAL REASONS, ONE OF WHICH WAS BECAUSE THE SUBTLE ADMINISTRATIVE SEGREGATION REVIEW ("ASR") PROCESS HE WENT THROUGH IN MAINE WAS FAULTY ON ITS FACE AS WILL BE EXHIBITED LATER IN THIS OPPOSITION TO THE MOTION TO DISMISS.

THESE ARE NOT WILD "HOME RUN SWING" CHARGES THE PLAINTIFF MAKES HERE ... THESE ARE FACTS BACKED UP BY DOCUMENTS THE PLAINTIFF HAS INSIDE AND OUT-SIDE HIS PRESENT PLACE OF CONFINEMENT.

THE LIMITED LIBERTY PRISONER CON-DON EARNED AND ENJOYED IN OPEN PRISON POPULATION WAS TAKEN "SOVIET STYLE" FROM HIM FOR 673 DAYS. HE HAS BEEN PUNISHED AND HE HAS SERIOUSLY SUFFERED MONETARILY, PHYSICALLY AND MENTALLY AS A DIRECT RESULT OF THE DEFENDANTS ACTIONS.

PLAINTIFF CONDON HAS DONE 35 STRAIGHT YEARS IN BOTH STATE AND FED-ERAL PRISON SYSTEMS (AS A MAINE STATE PRISONER) AND HE UNDER-STANDS QUITE WELL THAT WHEN A CONFI-DENTIAL INFORMANT OR OTHER INFORMATION INDICATES A PRISONER MIGHT BE SUSPECTED OF WRONGDOING, HE MAY BE ROUTINELY LOCKED UP IN ADMINISTRATIVE SEGREGA-TION ("AD.SEG") FROM 30 TO 60, EVEN 90 DAYS TO ALLOW TIME FOR THE IN-VESTIGATION INTO THE ALLEGED ACTIONS TO BE COMPLETED. BASED UPON PLAINTIFF'S OWN "BOOTS ON THE GROUND" PENAL EXPERIENCE, WHAT HAPPENED TO HIM IN MAINE (235 DAYS) AND THEN FLORIDA (438 DAYS) WAS NOT TYPICAL NOR INSIGNIFICANT IN RELATION TO THE ORDINARY INCIDENTS OF PRISON LIFE. IN AD.SEG. CASES, THE SUP-REME COURT HAS STATED THAT THE

POTENTIALLY INDEFINITE NATURE of CONFINE-
MENT WEIGHS IN FAVOR of FINDING ATYPICAL
AND SIGNIFICANT HARDSHIP. WILKINSON V.
AUSTIN, 545 U.S. 209, 224, 125 S.CT. 2384
(2005). SEE ALSO GIANO V SELSKY, 238 F2d
223, 226 (2nd CIR. 2001) (HOLDING THAT 92
DAYS IN ADMIN. SEGREGATION WAS 'ATYPICAL &
SIGNIFICANT SINCE IT FOLLOWED 640 DAYS
SEGREGATION AT ANOTHER PRISON).

Further, plaintiff WAS SWEPT over 1,000
miles AWAY TO ONE of THE MOST HARSHEST
PRISON SYSTEMS IN THE UNITED STATES: THE
FLORIDA DEPT of CORRECTIONS. INSTEAD of
SENDING plaintiff's property Along with Him,
(35 YEARS WORTH) TO FLORIDA, THE DEFENDANTS
ARE RESPONSIBLE for Confiscating $156.76
OUT of CONDON'S PRISON ACCOUNT (WITHOUT
His KNOWLEDGE or CONSENT) & SENT IT (PROPERTY) BY
U.S. MAIL when it COULD of GONE WITH HIM
AT NO COST. SEE APPENDIX C. ONCE CON-
DON'S PERSONAL PROPERTY ARRIVED AT RMC. LAKE
BUTLER, FLORIDA, THE F.D.O.C. "CONTRABANDED"
ALL of His property EXCEPT His LEGAL WORK
AND TOLD HIM TO EITHER SEND IT "HOME" (AT
His EXPENSE) OR IT WOULD BE DESTROYED.
SEE APPENDIX D. CONDON EVENTUALLY
MAILED IT OUT TO A FRIEND ON THE STREET
AT A COST of over $100.00  THUS, AS A
further result of BEING EXILED TO FLORIDA,
CONDON LOST ALL HIS PERSONAL PROPERTY
HE HAD BEEN ALLOWED TO KEEP over THE
YEARS (17 BOOKS, 2 PAIRS SNEAKERS, T.V.,
WATCH, COSMETICS, SHORTS, SOCKS,
SWEATSHIRT, THERMALS, ETC.) EXCEPT HIS
LEGAL WORK AT A TOTAL COST TO Him of

EASILY OVER $250.00 NOT FIGURING IN THE RE-
PLACEMENT COSTS OF THESE NECESSARY ITEMS

    PLAINTIFF'S 23 HOURS OUT OF 24 HOURS
IN-CELL CONFINEMENT IN THE CLOSE MAN-
AGEMENT ("CM") UNIT IN FLORIDA WAS QUITE
SIMILAR TO THE CONDITIONS IN WILKINSON
(THE CASE THE DEFENDANTS USE TO SUPPORT
THEIR ARGUMENT THAT PLAINTIFF DID NOT SUFFER
AN "ATYPICAL & SIGNIFICANT HARDSHIP." (DEFENDANT'S
MOTION TO DISMISS p.1 ¶2) HOWEVER, SEE
APPENDIX E FOR A BRIEF DESCRIPTION OF
THE C.M. HOUSING UNIT IN CELL INSTRUCTIONS.

    PLAINTIFF HAS NO ARGUMENT WITH
THE DUE PROCESS HE RECEIVED IN FLORIDA-
THEY HAD TO DO WHAT THEY HAD TO DO BASED ON
THE INFORMATION THE DEFENDANTS INSTRUCTED
THEIR SUBORDINATES TO SUPPLY THEM WITH. SEE
APPENDIX A AND B₁, B₂, B₃. ON NOVEMBER 14,
2014, WHEN PLAINTIFF WAS FORMALLY CLASSIFIED
TO C.M. STATUS, HE HAD NO PROPERTY, LEGAL
OR OTHERWISE, TO ARGUE AGAINST THE INFOR-
MATION THE DEFENDANTS HAD SUPPLIED THE
FLORIDA CLASSIFICATION TEAM WITH.

    THE "DUE PROCESS" PLAINTIFF RECEIVED
IN MAINE WAS A HORSE OF A DIFFERENT COLOR
ENTIRELY. PLAINTIFF WILL NOW MAKE A
THREE-PRONGED ATTACK ON THE VERY
SUBTLE ADMINISTRATIVE SEGREGATION REVIEW
PROCESS HE WAS SUBJECT TO AT MAINE
STATE PRISON AND WILL ASSERT, WITH
EVIDENCE, THAT, IN TRUTH, IT WAS NOT
"MEANINGFUL" AT ALL, BUT RATHER NOTHING
MORE THAN A "HOLLOW FORMALITY."

SMART V. GOORD, 441 F. Supp 2d 631, 642 (So. Dist. N.Y 2006).

FIRST AND FOREMOST, IN NEARLY EVERY ONE OF THE TWELVE AD. SEG. REVIEWS CONDON HAD IN THE 235 DAYS HE SPENT "UNDER INVESTI-GATION" THERE (AND PLAINTIFF HAS COPIES OF ALL OF THEM), IT WAS PLAINLY STATED THAT HE WAS BEING HELD IN AD. SEGREGATION "PENDING THE RE-SULTS OF THE IPS (INNER PERIMETER SECURITY TEAM) INVESTIGATION." SEVERAL WEEKS INTO CONDON'S SEGREGATION, HE WROTE TO LIEUTEN-ANT LIDIA BURNHAM (HEAD OF THE "IPS" IN-VESTIGATION TEAM) TO INQUIRE WHEN THE INVESTIGATION ON HIM MIGHT END, SO HE COULD SECURE SOME OF HIS PROPERTY IN SEG-REGATION (CONDON WAS TOLD IN SEG. THAT HIS "PERSONAL PROPERTY WAS "IMPOUNDED" UNTIL THE INVESTIGATION" WAS OVER). LT. BURNHAM WROTE BACK ON OR ABOUT APRIL 15th 2014, (APPROXIMATELY 45 DAYS AFTER CONDON WAS LOCKED-UP) AND INNOCENTLY STATED: "I AM NOT AWARE OF ANY PENDING INVESTIGATIONS THAT YOU ARE INVOLVED." (SEE APPENDIX F) (EVIDENTLY THE DEFENDANTS HAD FAILED TO "CLUE HER IN," SO TO SPEAK).

THEREFORE, THE "PENDING THE RESULTS" OF THE "IPS INVESTIGATION" REASON FOR HOLDING CONDON IN SEGREGATION WAS BOGUS. THE SAME HOLDS TRUE FOR THE "COMMIS-SIONER'S SIX MONTHLY REVIEW OF ADMINIS-TRATIVE STATUS" (APPENDIX G) WHERE DEFENDANT DEPUTY COMMISSIONER "APPROVES" THE SIX MONTH / SEGREGATION OF CONDON AND "APPROVES" CONTINUATION OF THE SEGREGATION OF CONDON BASED UPON THE ALL-IMPORTANT

"IPS INVESTIGATION" EVIDENTLY STILL IN PROGRESS. WELL IT MIGHT OF BEEN "ALL IMPORTANT," BUT IT CERTAINLY WAS NOT "ALL-ABOVE-BOARD." BOTH DEFENDANT BRETON AND DEFENDANT ROSS PUT THEIR SIGNATURES ON THE SIX MONTH REVIEW, WHICH BY POLICY WAS SUPPOSED TO BE DONE BY THE COMMISSIONER HIMSELF, NOT A SUBORDINATE DEPUTY COMMISSIONER. SO EVEN SIX MONTHS INTO CONDON'S CONFINEMENT, BOTH THE DEPUTY WARDEN OF MAINE STATE PRISON AND DEPUTY COMMISSIONER OF THE M.D.O.C. ARE USING THE "IPS INVESTIGATION" COMPLETION AS THE REASON FOR HOLDING CONDON. AN "INVESTIGATION" THAT THE HEAD OF THE IPS TEAM KNOWS NOTHING ABOUT. THIS IS APPARENTLY AN INVESTIGATION THAT NEVER WAS AND WENT NOWHERE. "THE FACT THAT AN INVESTIGATION IS CHARACTERIZED AS ONGOING" WILL NOT AUTOMATICALLY JUSTIFY KEEPING THE INMATE IN ADMINISTRATIVE SEGREGATION." THOMPSON-EL v. JONES, 876 F.2d 66, 69 (8th CIR. 1989).

        FURTHERMORE, THE ASR "DUE PROCESS" PLAINTIFF WAS SUBJECT TO AND WAS TO MEET "THE MOST BASIC LIBERTY INTERESTS IN PRISONERS" HEWITT V. HELMS, /459 U.S. 460, 467 (1983) WAS FAULTY ON ITS FACE. TO WIT: ON MARCH 27, 2014, MORE THAN THREE WEEKS INTO CONDON'S STAY IN AD. SEG., THE ASR BOARD DECIDED TO RELEASE CONDON BACK INTO GENERAL POPULATION (SEE APPENDIX H, SECT III "UNIT MANAGEMENT TEAM DECISION"). HOWEVER, AT THE VERY BOTTOM OF THE M.D.O.C. "ADMINISTRATIVE SEGREGATION STATUS REVIEW MINUTES" (APPENDIX H, SECTION VI),

THERE IS A SPACE
WHERE THE "CAO OR HIS DESIGNEE" HAS
HIS OWN PRIVATE REVIEW (ABSENT PLAINTIFF
CONDON OR ANYONE ELSE) WHICH CAN, IN FACT,
"OVERRULE" THE AD. SEG. REVIEW BOARD'S
DECISION TO RELEASE CONDON WITHOUT
COMMENT. THIS, IN FACT, HAPPENED (SEE
APPENDIX H. SECTION VI WHERE CAO
DESIGNEE DEFENDANT ROSS
CHECKED (✓) TO "OVERRULE" THE BOARD'S
DECISION AND HIS SIGNATURE ON SAME
DAY (3/27/14). THERE IS REALLY NO WAY
TO APPEAL THIS KIND OF "CZARIST" ACTION
FOR THE APPEAL BY PLAINTIFF CONDON WOULD
BE DECIDED BY THE VERY MAN WHO
SHORT-STOPPED THE AD. SEG. REV. BD'S ORIGINAL
DECISION...: CAO DESIGNEE DEFENDANT ROSS!

AT NO TIME IS THERE AN OPPORTUN-
ITY FOR CONDON TO "HEAR AND BE HEARD"
BY DESIGNEE DEFENDANT ROSS NOR CAO
BOUFFARD (WHO STAYS MOSTLY OUT OF
THE PICTURE HERE BUT WHO HAS THE
CONTROLING HAND ON CONDON'S STATUS).
THE SUPREME COURT IN WILKINSON
@ 226 MADE IT ABUNDANTLY CLEAR THAT
THE ABOVE "STYLE" OF SUBTLENESS EVADES
THE MINIMUM DUE PROCESS REQUIRE-
MENTS THAT A PRISONER IS TO BE
AFFORDED: "IF ONE REVIEWER RECOM-
MENDS AGAINST PLACEMENT (IN AD. SEG.)
... A LATER REVIEWER COULD NOT OVER-
TURN THAT" WILKINSON AT 226.

THESE THREE POINTS: (1) THE APPARENTLY
BOGUS "IPS INVESTIGATION," (2) THE FAULTY

ADMINISTRATIVE SEGREGATION REVIEW ('ASR')
PROCESS AND (3) PLAINTIFF NEVER BEING
AFFORDED THE CHANCE TO "HEAR & BE HEARD"
BY ANY ONE OF THE THREE ULTIMATE DECISION
MAKERS (DEFENDANTS ROSS, BOUFFARD & BRETON)
ON WHETHER TO KEEP HIM IN ADMINISTRATIVE
SEGREGATION OR RELEASE HIM BACK INTO THE
GENERAL POPULATION OF MAINE STATE PRISON.
APPENDIXS I AND J SHOW CORRESPONDENCE
BETWEEN DEFENDANT BRETON AND PLAINTIFF.
PLEASE NOTE HOW DEFENDANT BRETON IMPLI-
CATES DEFENDANT BOUFFARD'S CONTROLLING
HAND AS ONE OF THE THREE "ULTIMATE DECISION
MAKER(S)."

    IT IS QUITE CLEAR THAT PRISONERS
BEING HELD IN ADMINISTRATIVE SEGREGATION
MUST BE ABLE TO PRESENT THEIR VIEWS
DIRECTLY TO THE PERSON WHO MAKES THE
DECISION. HATCH V. DISTRICT OF COLUMBIA, 184
F.3d, 846, 852 (D.C. Cir. 1999), TOUSSAINT V.
MᶜCARTHY, 956 F.2d 800, 803 (9ᵗʰ Cir. 1990),
GITTENS V. LeFEVRE, 891 F.2d 38, 41-42 (2ⁿᵈ
CiR 1989).

    THE PLAINTIFF BELIEVES HE HAS
SHOWN THIS COURT THAT HE HAS MET THE
SANDIN V. CONNOR STANDARDS THAT ENTITLES
HIM TO DUE PROCESS IN THIS 673 DAY LOSS
OF LIBERTY THAT WAS FORCED UPON HIM BY
THE DEFENDANTS. HE ALSO BELIEVES HE
HAS SHOWN THIS COURT THAT HIS "DUE
PROCESS" RIGHTS WERE VIOLATED IN THAT
THE MAINE STATE PRISON'S AND MAINE DEPART-
MENT OF CORRECTION'S ADMINISTRATIVE
SEGREGATION REVIEW PROCESS WAS NOTHING
MORE THAN A "PERFUNCTORY REVIEW"
SOURBEER V. ROBINSON, 691 F.2d 1094, 1101

(3rd Cir. 1986), A Hollow Formality as in the Case of SMART v. GOORD, 441 F.Supp.2d @ 642, an Ad. Seg. Review That went Nowhere and lasted 235 Days without a formal Charge or Conviction.

## Equal Protection Claim

Plaintiff pro.se. believes his Equal Protection Claim has Equal merit alongside his Aforementioned Due Process Claim. As mentioned, plaintiff has spent 35 straight years in both Federal & State prison systems (but always as a Maine State Prisoner) and he is familiar with the Disciplinary Procedures of same.

For a prisoner to spend 673 consecutive days in Disciplinary Segregation conditions in two Maximum Security (SHU's) over 1,000 miles apart on an allegation that carried only 20 days in segregation, if he was found guilty of the offense ("Threatening") is extraordinary, to say the least. See Appendix $K_1$ and $K_2$ for M.D.O.C.'s policy and sanctions re: Charge of "Threatening." Plaintiff, who never was charged with wrong-doing in Maine or Florida, spent all that time locked up in 10'x6' cells solely on the word or information given by a Confidential Informant. To wit: A Fellow Inmate.

Plaintiff Condon comes before this Court maintaining that the Defendants

TREATED HIM RADICALLY DIFFERENT FROM OTHER MAINE STATE PRISONERS WHO HAVE BEEN SIMILARLY SITUATED AND THEN SENTENCED (OR NOT SENTENCED AT ALL). THE DEFENDANTS HERE PLACED THE PLAINTIFF INTO A "CLASS OF ONE"

THE SUPREME COURT HAS HELD THAT AN INDIVIDUAL WHO CLAIMS HE HAS BEEN TREATED DIFFERENTLY FROM OTHERS SIMILARLY SITUATED, INTENTIONALLY AND WITHOUT A RATIONAL BASIS STATES AN EQUAL PROTECTION CLAIM AS A "CLASS OF ONE." Village of Willowbrook v. Olech, 528 U.S. 562, 564-65 (2000). THE PLAINTIFF IN SUCH A CASE WILL BE REQUIRED TO SHOW, NOT ONLY THAT HE WAS BADLY TREATED, BUT ALSO THAT PERSONS SIMILARLY SITUATED WERE NOT TREATED THAT WAY. ALICEA v. HOWELL, 387 F. Supp. 2d, 227, 236 (W.D.N.Y. '05).

HOW MANY MAINE STATE PRISONERS IN THE LAST 20 YEARS HAVE BEEN CHARGED WITH THREATENING OR BEEN PUT ON ADMIN-ISTRATIVE SEGREGATION PENDING THE RESULTS OF AN "INVESTIGATION" INTO THE CHARGE OF THREATENING? HOW LONG DID THEY SPEND ON AD. SEGREGATION? HOW MANY WHO WERE CHARGED WITH "THREATENING" WERE TRANS-FERRED TO ANOTHER STATE PRISON SYSTEM? HOW LONG DID THEY SPEND IN SEGREGATION UPON THEIR ARRIVAL IN ANOTHER STATE? HOW MANY WERE BROUGHT BEFORE A MAINE STATE PRISON ("MSP") DISCIPLINARY BOARD FOR ADJUDICATION OF THE CHARGE OF THREAT-ENING? HOW LONG DID THEY SERVE ON SEGREGATED STATUS IF FOUND GUILTY?

How many were victims of an investiga-
tion that never reached a conclusion?
How many were convicted solely on the
word or secret testimony of an inmate
confidential informant? ... Only
"Discovery" will reveal the answers to
questions like these and others.

    Plaintiff Condon is a non-
legal trained pro se litigant. He has
no legal training and was never filed
for "Discovery" anywhere. Courts have
generally held pro se complaints to less
stringent standards than formal plead-
ings drafted by lawyers. Erikson v. Pardus,
551 U.S. 89, 94 (2007)(per curiam);
Hughes v. Rowe, 449 U.S. 59 (1980)
(citing Haines v. Kerner, 404 U.S. 579,
520-21 (1972)(per curiam) pro se com-
plaints are entitled to liberal construc-
tion. As a prisoner, especially one who
was transferred over 1,000 miles from the
site of his complaint and in the midst
of a legal action in a state court regard-
ing same complaint, Plaintiff Condon was
    not able to investigate before filing
this action for a number of reasons.
The leading one being that the Defendants
transferred him over 1,000 miles away
into another state prison system.
Billman v. Indiana Dept. of Corrections,
56 F.3d 785, 789-90 (7th Cir. 1995). Accord
Rodriguez v. Plymouth Ambulance Service,
577 F.3d 816, 821 (7th Cir. 2009). At some
point here Plaintiff will need the assistance

OF A TRAINED ATTORNEY TO HANDLE THE MORE TECHNICAL ASPECTS OF THIS CASE AND HE IS ACTIVELY SEEKING ONE AT THIS TIME WITH LITTLE SUCCESS/SO FAR.

The DEFENDANTS, IN Their INSTANT Motion to DISMISS PLAINTIFF CONDON'S ORIGINAL COMPLAINT RELY HEAVILY ON The SUPREME COURT CASE of ASHCROFT V. Iqbal, 556 US 662, (677-81)(2009) IN THAT PLAINTIFF CONDON DID NOT BRING up Any EXAMPLES of COMPARISON AS JUST DISCUSSED. HOWEVER, The IQBAL CASE WAS NOT PRO SE... AND THE SUPREME COURT GAVE NO INDICATION THAT IT INTENDED TO overrule The CASES PLAINTIFF JUST CITED ON p. 15 of THIS OPPOSITION.

PLAINTIFF RESPECTFULLY MAINTAINS TO THIS COURT THAT, HOWEVER CRUDELY PLOT BY THIS PLAINTIFF, THE FACTS HE HAS SWORN TO IN HIS ORIGINAL COMPLAINT SPEAK LOUDLY. BELL ATLANTIC V TWOMBLY @ 555, IQBAL @ 1939. TO REMOVE THE LIMITED LIBERTY A PRISONER EARNS AND ENJOYS "SOVIET-STYLE" for 235 DAYS BASED UPON SOME OTHER INMATES "TALE" TO The ADMINISTRATION THAT CONDON SAID "THIS OR THAT" about SOME STAFF MEMBER DURING A CELL "RAP SESSION" And THEN move Him "SOVIET-STYLE" OVER 1,000 MILES AWAY SO SOME OTHER STATE PRISON SYSTEM CAN/"RE-EDUCATE" Him for A FURTHER 438 DAYS SHOWS MALICIOUS INTENT UPON The PART of DEFENDANTS.

The DEFENDANTS, The ULTIMATE Decision MAKERS ON CONDONS SEGREGATED FATE AND

Who STEADfASTly REfuSED TO MEET wiTH CON-
DoN FoRMALLy oR InfoRMALLy AT ANy TiME,
ACTED ARBiTRARily, CAPRiCiOUSLy AnD
WiTh A MALfiC AbuSE of DiSCRETiON. THEy
TREATED CONDON AS A "CLASS of ONE" AnD
THEy DiSCRiMiNATED AgAiNST HiM. Why
THEy DiD SO iS THEiR TALE TO TELL.

## THE RETALiATION CLAiM —

Well over 120 DAyS of ConfiNEMENT
ON AD. Seg. STATUS AT MSP's "SupERMAX",
PLAinTiff fiLED A pro se PETiTiON foR JuDiCiAL
REViEw UNDER THE MAiNE STATE ADMiNiSTRA-
TiVE pro ceduRES ACT wiTH KNOX COUNTy
SupERiOR COURT iN ROCKLAND, MAiNE (DocK-
ET No. AP.-14-23). THE PLAiNTiff MAiNTAiNS
THAT THE DEfENDANTS RETALiATED AgAiNST HiM
foR ExERCiSiNg his 1ST AMENDMENT Right
By TRANSfERRing HiM over 1,000 MiLES
TO THE FLORiDA DEpT. of CoRRECTiONS ("FDOC"),
KNOWN AMONg iNMATES NATiON-WiDE As
ONE of THE HARShEST pRiSON SySTEMS TO
DO TiME iN, pERiOD.

In his oRigiNAL COMpLAiNT HERE iN
THiS HoNoRABLE COURT, THE PLAiNTiff MAiN-
TAiNS THAT, UNDER OATH, HE SuppLiED All
THE fACTUAL iNfoRMATiON TO SuppORT THE
"PLAuSiBLE ALLEGATiONS MEETiNg THE STANDARD
SET By THE SupREME COURT iN Ashcroft v.
Iqbal, 556 u.S. 2 677-81.

ADDRESSing THE DEfENDANTS ASSERTiON
THAT PLAiNTiff RELiES ON THE fACT THAT HE
WAS NEVER "CONViCTED" of ANy wRONG-DOiNg

IN MAINE, THAT IS TRUE. DEFENDANTS GO ON TO ARGUE THAT "PLACEMENT IN AD. SEG NEED NOT BE BASED ON A FINDING OF GUILT" CITING HEWITT V. HELMS 459 US @ 474. THAT IS ALSO TRUE. THEREFORE, THE QUESTIONS BEGS: WHY DID THE DEFENDANTS STATE ON PAPER TO FLA. AUTHORITIES: "HE WAS ON SEGREGATED STATUS... DUE TO HIS RECENT THREATS HE MADE TO STAFF" (APPENDIX A) AND ON APPENDIX B, (WHERE CONDON WAS APPEALING HIS ONE YEAR SENTENCE TO C.M.) THE FLORIDA AUTHORITIES STATE TO CONDON: "DUE TO INFORMATION RECEIVED FROM MAINE WHICH READS THAT YOU WERE A MANAGEMENT PROBLEM DUE TO ASSAULTIVE BEHAVIOR TOWARD STAFF AND OTHER INMATES... DUE TO THREATS MADE TO STAFF AND ANOTHER INMATE..." (EMPHASIS MINE).

IT APPARENTLY WAS JUST CONVENIENT TO "CONVICT" CONDON ON PAPER FOR THE F.D.O.C. WHO IN TURN TOOK THAT "CONVICTION" SERIOUSLY TO THE TUNE OF 438 DAYS IN A 10'X6' CELL. FOR THE RECORD, PLAINTIFF CONDON STILL STATES HE IS NOT GUILTY OF ANY OF THOSE "CONVICTIONS," NEVER HAD A "TRIAL," NEVER HAD THE RIGHT TO BE HEARD AND TO HEAR THE CHARGES FROM THE THREE ULTIMATE DECISION MAKERS: THE DEFENDANTS. ALL THIS CAME FROM ONE CONFIDENTIAL UNKNOWN INFORMANT, AN INMATE.

GETTING BACK TO THE RETALIATION CLAIM, WELL AFTER PLAINTIFF CONDON FILED HIS PETITION FOR ADMINISTRATIVE REVIEW (TITLE 5 M.R.S.A. § 1101 ET SEQ. AND RULE 80C M.R.Civ. P.), ON OCT 28TH 2014, AT 2:00 A.M. PLAINTIFF WAS TAKEN OUT OF HIS CELL TO START HIS FIVE DAY JOURNEY TO FLORIDA AFTER SPENDING

235 Days in a 10x6 in Maine's "supermax."
Well into his C.M. "sentence" and still
litigating his Administrative Procedures
Act Action (APPENDIX L), The Respon-
dents (Defendants here) moved on February
2, 2015 to Dismiss Condon's petition be-
cause he was no longer in the State and
the Knox County Superior Court no longer
had jurisdiction (See APPENDIX M). The
Plaintiff Countered that "Convenient"
Move by volunteering to withdraw/dis-
miss his petition/without prejudice
so he could seek relief in the United States
Federal Court System. (APPENDIX N).
Plaintiff Condon maintains the facts re-
lated pretty well speak for themselves
on this Retaliation Claim: If Condon
wasn't convicted of any wrong-doing in
Maine... why did they transfer him ??
The answer is because he was creating
Havoc in the State Court so they
wanted to "Silence" him by banishing him;
A strong violation by the Defendants of
Condon's First Amendment Right to not
be retaliated against for exercising
that Constitutional Right.

## The Cruel & Unusual Claim

Plaintiff Condon does not allege that
he suffered the environmental conditions
the Defendants raise via Hutto v. Finney,
437 US 678 (1978) outside of being forced
to Cell (in Florida) for months at a time
with aggressively psychotic inmates.

What plaintiff is alleging as "unusual," and thus "cruel," is the blatant disregard for his American Constitutional Rights, especially the "cavalier" attitude the Defendants displayed in doing so when they should be the ones most knowledge-able in protecting the rights of the prisoners they hold captive. In actuality, they knew the constitutional rights of prisoners, but paid them no mind because the vast majority of Maine State prisoners are in-competent to file legal papers, enter into a Westlaw computer or just don't know their rights and how to enforce them.

Plaintiff Condon is not unfamiliar with his constitutional rights as a prisoner and has a 3½ year college education. Plaintiff has never filed a lawsuit during the 30 years he spent 'housed' in the U.S. Bureau of Prisons ("BOP") because he had no need to do so. It appears from Condon's two year hiatus (2012-2014) at Maine State Prison, the Defendants never had a prisoner who was competent enough to file a complaint regarding the ramshackle manner Defendants run over the Constitutional Rights of the prisoners they lock up in segregation and ad-seg. Thus, the slashing of wrists in the MSP 'supermax" as a way to draw attention to their prisoner frustrations. A national disgrace.

The Defendants are solely responsible for the excessive confinement of 643 days

THAT PLAINTIFF HAD TO SPEND IN VARIOUS 10'
X 6' CELLS 23 HOURS OR MORE EACH DAY, MUCH
OF IT ALONE. HE HAD PLENTY TO MULL OVER IN
HIS MIND CONTEMPLATING WHAT HE HAD TO
ENDURE TO BE PLACED IN THE SITUATIONS
FORCED UPON HIM. NAMELY: (1) AN APPARENTLY
"FAKE" INVESTIGATION AS THE REASON OR EX-
CUSE FOR HIS PROLONGED 235 DAY STAY IN
MSP'S "SUPERMAX," (2) A MEANINGLESS ADMIN.
SEG. REVIEW PROCESS THAT WAS NOTHING MORE
THAN A "HOLLOW FORMALITY," (3) A DRASTIC
TRANSFER TO A HARSH FLORIDA PRISON SYSTEM
RESULTING IN THE LOSS OF 90% OF HIS PERSONAL
PROPERTY; (4) THE "THEFT" OF $156.76 OUT OF
HIS INMATE ACCOUNT TO FINALLY SEND HIS PROPERTY
TO HIM IN FLORIDA WHEN IT COULD OF TRAVELED
WITH HIM; (5) THE EXTREME ANGUISH AND FRUS-
TRATION HE EXPERIENCED TRYING UNSUCCESSFULLY
TO EXPLAIN TO AN UNBELIEVING FLORIDA DEPT
OF CORRECTION'S CLASSIFICATION COMMITTEE THAT
HE WAS STILL "UNDER INVESTIGATION" BY MAINE
AUTHORITIES AND HE HAS BEEN CONVICTED OF
NO WRONGDOING. (APPENDIX B-3).

    PLAINTIFF, WHO IS NOW 69 YEARS OLD, LOST
TWO YEARS OF PRISONER EARNED LIBERTY OVER
SOME BOGUS INVESTIGATION INTO A CONFIDENTIAL
INMATE INFORMANT'S TALE THAT CONDON USED
THREATENING LANGUAGE TOWARDS SOME MSP
STAFF MEMBER DURING A PRISONER RAP SES-
SION IN CONDON'S CELL. ALL OF THE ABOVE
AND MORE HAS JETTISONED PLAINTIFF'S MILD
CASE OF RESTLESS LEG SYNDROME INTO
VIOLENT LEG SPASMS THAT HE SUFFERS FROM
TODAY. (NERVE RELATED & DOCUMENTED).
    LIBERTY; THAT WAS FORCIBLY TAKEN

FROM PLAINTIFF CONDON WITHOUT DUE PROCESS OF LAW THAT WAS MEANINGFUL. PLAINTIFF DEEMS IT CRUEL, ESPECIALLY IN A PRISON SETTING, TO BE RESPONSIBLE FOR LOCKING UP A MAN IN TWO "SUPERMAXS" FOR 673 DAYS ON THE SUSPICION (COMING FROM ANOTHER INMATE) THAT HE SAID SOMETHING" THAT THE INMATE INFORMANT FELT WAS A "THREAT" TOWARD A M.S.P. STAFF MEMBER.

PRISONERS DO NOT "LOSE" THEIR CONSTITUTIONAL RIGHTS WHEN THEY ENTER THE GATES OF MAINE STATE PRISON NOR DO THEY LOSE THEM WHEN "JAILED" INSIDE A PRISON IN SOME "SHU" OR "SUPERMAX." IT DOES NOT WORK THAT WAY IN THIS COUNTRY AND THAT IS WHY AMERICA IS GREAT AND WILL BECOME GREATER. THE MEN WHO CARRIED THIS COUNTRY ON THEIR BACKS MADE SURE OF THAT. THEY WROTE IT IN INK AND THEY WROTE IT IN STEEL AND IT GREETS EVERYONE WHO ENTERS THE NEW YORK HARBOR. LIBERTY: IT IS NOT TO BE PLAYED WITH, LIED TO, ABUSED, OVERLOOKED AND SLIGHTED EVEN IN THE CASE(S) OF LOWLY PRISONERS. FOR THE MEN WHO CARRIED THIS COUNTRY ON THEIR BACKS, IF THEY HAD LOST, WOULD OF FACED THE SAME ABUSES PRISONER PLAINTIFF CONDON ABSORBED FROM THESE THREE DEFENDANTS. THESE DEFENDANTS:

(1) VIOLATED PLAINTIFF'S CONSTITUTIONAL RIGHTS;
(2) ACTED IN EXCESS OF STATUTORY AUTH-ORITY AND THEIR OWN POLICY STATEMENTS;
(3) MADE CONCLUSIONS BASED UPON UN-LAWFUL PROCEDURE;

(4) WERE AFFECTED BY BIAS AGAINST THE PLAINTIFF;

(5) MADE DECISIONS UNSUPPORTED BY SUBSTANTIAL EVIDENCE; AND

(6) ACTED ARBITRARILY, CAPRICIOUSLY AND WITH AN ABUSE OF DISCRETION.

FOR ALL THESE REASONS AND MORE, THE PLAINTIFF OPPOSES DEFENDANTS MOTION TO DISMISS.

DATED: NOV. 19TH, 2016

JOHN J. CONDON, PRO SE
# 148840
ZCI. 2739 GALL BLVD.
ZEPHYRHILLS, FLA 33541

~ CERTIFICATION ~

I CERTIFY THAT I CAUSED ONE COPY OF THIS FILING TO BE SERVED UPON DIANE SLEEK, AAG, OFFICE OF THE ATTORNEY GENERAL, SIX STATE HOUSE STATION, AUGUSTA, MAINE 04333 BY DEPOSITING SAME IN THE U.S. MAIL, POSTAGE PREPAID.

DATED: NOVEMBER 19TH, 2016

JOHN J. CONDON, PRO SE