UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| JOHN JAY CONDON, | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | 1:16-cv-00372-JAW |
| | ) | |
| RODNEY BOUFFARD, et al., | ) | |
| | ) | |
| Defendants | ) | |

**RECOMMENDED DECISION ON DEFENDANTS' MOTION TO DISMISS**

In this action, Plaintiff John Jay Condon alleges Defendants Rodney Bouffard, Troy Ross, and Jody Breton violated his constitutional rights under the Fourteenth Amendment Due Process Clause, the Fourteenth Amendment Equal Protection Clause, the Eighth Amendment Cruel and Unusual Punishments Clause, and the First Amendment Petition Clause. Plaintiff alleges the violations occurred when Defendants subjected him to prolonged confinement in segregation at the Maine State Prison and, after he petitioned for review of administrative action in state court, transferred him to the Zephyrhills Correctional Institution in Florida.

The matter is before the Court on Defendants' motion to dismiss. (ECF No. 6.) Through their motion, Defendants contend Plaintiff has failed to state an actionable due process claim because the segregation was the product of an administrative procedure that complied with procedural due process and because the segregation and out-of-state transfer did not involve atypical and significant hardships. Defendants also argue Plaintiff has not asserted any other actionable constitutional claim.

Following a review of the relevant pleadings, I recommend the Court grant in part Defendants' motion to dismiss.

## BACKGROUND FACTS

The facts set forth herein are derived from Plaintiff's verified complaint. (ECF No. 1-2.) The factual allegations of the complaint are deemed true when evaluating the motion to dismiss. *Beddall v. State St. Bank & Trust Co.*, 137 F.3d 12, 16 (1st Cir. 1998).

On March 5, 2014, Plaintiff was removed from the general population of the Maine State Prison and placed in the segregated Special Management Unit (SMU) of the Prison's "supermax" building.[1] (Compl. ¶ 9; Pl.'s Opposition to Motion at 4, ECF No. 10.) Five days later, Plaintiff's placement was the subject of an administrative segregation review (ASR), at which time he was informed that another inmate reported that he posed a threat to a member of the prison staff.[2] (Compl. ¶ 10.) According to Plaintiff, the reviews are conducted by the ASR board based on investigations conducted by inner perimeter security (IPS). (*Id.* ¶ 11.)

On March 20, 2014, Plaintiff received a second review, during which he learned he would remain in segregation in the SMU pending the outcome of the IPS investigation. (*Id.* ¶ 13.) At each review, Plaintiff stated that he had no intention of hurting anyone. (*Id.* ¶ 14.)

On March 27, 2014, the ASR board convened and decided to return Plaintiff to general population. (*Id.* ¶ 15.) Plaintiff asserts, however, that Defendant Troy Ross, the Deputy

---

[1] Plaintiff was 68 when he filed his complaint. Plaintiff is serving a sentence imposed thirty-five years ago on three counts of murder, one count of arson, and two counts of theft by unauthorized taking. *State v. Condon*, 468 A.2d 1348, 1349 (Me. 1983). Plaintiff alleges a "long standing history of manic depressive illness," (Complaint ¶ 52), which illness was a subject in his appeal from the conviction. *Id.* at 1351.

[2] According to Plaintiff, a conviction on a charge of threatening has a maximum sanction of 20 days in segregation. (Compl. ¶ 45.)

Warden, overruled the board's decision.  (*Id.* ¶¶ 16 – 17; *see also* ASR Minutes of March 27, 2014, ECF No. 10-10.)  Plaintiff had no ability to present his case to Defendant Ross, nor to appeal from Defendant Ross's decision.  (Compl. ¶ 18.)  Plaintiff contends the lack of an appeal is a constitutional flaw in the ASR process.  (*Id.* ¶¶ 19 – 20.)

In April 2014, Plaintiff received four more reviews without a change in his segregation status.  During one of the reviews, Plaintiff learned that a new unit was being formed for certain inmates and that he would eventually be moved to the new unit.  (*Id.* ¶¶ 21 – 23, 29.)  On April 15, in response to Plaintiff's inquiry as to when the investigation would conclude, the chief of the investigatory team informed Plaintiff there was no pending investigation regarding Plaintiff.  (*Id.* ¶ 26.)  Defendant Ross denied Plaintiff's appeals from the results of the reviews.  (*Id.* ¶ 29.)

Plaintiff also filed a grievance regarding the lack of an investigation.  On April 28, 2014, the grievance was dismissed, and he was informed the process to address Plaintiff's complaint was the ASR. (*Id.* ¶ 28.)  Plaintiff subsequently filed a grievance claiming the process was flawed, but his grievance was dismissed.  (*Id.* ¶¶ 30 – 31.)

Plaintiff's segregation status was maintained following his May 2, 2014, ASR.  (*Id.* ¶ 32.) Defendant Ross denied his appeal.  (*Id.* ¶ 33.)  At Plaintiff's next ASR, on June 24, 2014, his placement was not changed.  (*Id.* ¶ 34.)  His appeal was again denied by Defendant Ross. (*Id*.)

On July 20, 2014, Plaintiff filed a petition for judicial review of administrative action in state court.  (*Id.* ¶ 35.)  Plaintiff's ASR reviews in July and August did not result in a release from segregation.  (*Id.* ¶¶ 36 – 37.)

In September 2014, Defendant Jody Breton, the Deputy Commissioner, conducted a six-month review of Plaintiff's placement. Plaintiff was not permitted to attend the review or address Defendant Breton in connection with the review. Defendant Breton approved Plaintiff's continued segregation pending the conclusion of the IPS investigation. (*Id.* ¶ 38.) When Plaintiff wrote to Defendant Breton to complain that he had not been heard, Defendant Breton responded that she relied on the recommendation of the warden (Defendant Rodney Bouffard). (*Id.* ¶¶ 39 – 40.)

Plaintiff filed a grievance on September 29, 2014, to complain that the warden, contrary to a policy statement that the warden would visit the SMU weekly, had not visited the SMU during the period of Plaintiff's segregation. (*Id.* ¶ 43.) The grievance was dismissed. (*Id.* ¶ 44.)

Plaintiff's stay in the Maine State Prison's SMU ended on October 28, 2014, at which time he was transferred to the custody of the Florida Department of Corrections. (*Id.* ¶ 46.) Defendants withdrew $156.76 from Plaintiff's inmate account to cover the cost of forwarding Plaintiff's property to Florida. (*Id.* ¶ 50.) According to Plaintiff, the letter of introduction to the Florida Department of Corrections falsely stated that he made threats to staff and another inmate, and that his assaultive behavior made him a management problem. (*Id.* ¶¶ 47, 48.) Based on the representation, the Florida Department of Corrections placed Plaintiff in a one-year "close monitoring" program. (*Id.*) Plaintiff claims Defendants arranged for the transfer in retaliation for the state court lawsuit he filed in April 2014. (*Id.* ¶ 49.)

While in segregation at the Maine State Prison, Plaintiff was continuously confined in various cells of roughly 60 square feet for over 23 hours daily. Between Maine and Florida,

Plaintiff was in segregation for 673 days.  (*Id.* at pp. 10 – 11.)  In addition to the loss of association with other inmates, Plaintiff lost the ability to work; to attend educational, vocational, religious, and special musical programs; to listen to his radio; to recreate outdoors and exercise in a congregate setting; to attend group meals; to access the library; to attend club functions; and to sit in a chair.  (*Id.*)

DISCUSSION

### A.    Standard of Review

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a party may seek dismissal of "a claim for relief in any pleading" if that party believes that the pleading fails "to state a claim upon which relief can be granted."   In its assessment of the motion, a court must "assume the truth of all well-plead facts and give the plaintiff[] the benefit of all reasonable inferences therefrom."  *Blanco v. Bath Iron Works Corp.*, 802 F. Supp. 2d 215, 221 (D. Me. 2011) (quoting *Genzyme Corp. v. Fed. Ins. Co.,* 622 F.3d 62, 68 (1st Cir. 2010)).  To overcome the motion, therefore, the plaintiff must establish that his allegations raise a plausible basis for a fact finder to conclude that the defendant is legally responsible for the claim(s) at issue.  *Id.*[3]

### B.    Analysis

Defendants argue dismissal is warranted because Plaintiff's alleged conditions of confinement do not constitute an atypical and significant hardship; Plaintiff's ability to present his case to the ASR board satisfies the procedural due process requirement; due process does not require a hearing on an administrative appeal; and Plaintiff has not alleged

---

[3] Because Plaintiff is a pro se litigant, his complaint is subject to "less stringent standards than formal pleadings drafted by lawyers."  *Haines v. Kerner,* 404 U.S. 519, 520 (1972).

facts that would support a plausible causal connection between protected activity and his transfer to the Florida Department of Corrections.  (Motion at 3 – 7.)

## 1.   Due process

The Due Process Clause of the Fourteenth Amendment prohibits a state from depriving a person of "life, liberty, or property, without due process of law."  U.S. Const. amend. XIV, § 1.  The analysis of a due process claim includes two issues.  A court first considers "whether there exists a liberty or property interest of which a person has been deprived," and if so, it then considers "whether the procedures followed by the State were constitutionally sufficient."  *Swarthout v. Cooke*, 562 U.S. 216, 219 (2011).  "[T]he processes required by the Clause with respect to the termination of a protected interest will vary depending upon the importance attached to the interest and the particular circumstances under which the deprivation may occur."  *Walters v. Nat'l Ass'n of Radiation Survivors*, 473 U.S. 305, 320 (1985).

"[W]hile persons imprisoned for crime enjoy many protections of the Constitution, it is also clear that imprisonment carries with it the circumscription or loss of many significant rights."  *Hudson v. Palmer*, 468 U.S. 517, 524 (1984).  With respect to the Due Process Clause, "[a]s long as the conditions or degree of confinement to which the prisoner is subjected is within the sentence imposed upon him and is not otherwise violative of the Constitution, the Due Process Clause does not in itself subject an inmate's treatment by prison authorities to judicial oversight."  *Montanye v. Haymes,* 427 U.S. 236, 242 (1976).

A convicted prisoner thus does not have a constitutional right to a particular security classification or to confinement in a particular facility.  *Wilkinson v. Austin*, 545 U.S. 209,

221 – 22 (2005)  ("[T]he Constitution itself does not give rise to a liberty interest in avoiding transfer to more adverse conditions of confinement"); *Hewitt v. Helms*, 459 U.S. 460, 468 (1983) ("[T]he transfer of an inmate to less amendable and more restrictive quarters for nonpunitive reasons is well within the terms of confinement ordinarily contemplated by a prison sentence" (concerning administrative segregation)); *Haymes*, 427 U.S. at 242 ("The Clause does not require hearings in connection with transfers whether or not they are the result of the inmate's misbehavior or may be labeled as disciplinary or punitive."); *Meachum v. Fano,* 427 U.S. 215, 225 (1976) (no liberty interest arising from Due Process Clause itself in transfer from low– to maximum–security prison because "[c]onfinement in any of the State's institutions is within the normal limits or range of custody which the conviction has authorized the State to impose").  *See also Williams v. Lindamood*, 526 F. App'x. 559, 563 (6th Cir. 2013) ("[A] prisoner has no constitutional right to be incarcerated in a particular prison or to be held in a specific security classification." (quoting *Harbin-Bey v. Rutter*, 420 F.3d 571, 577 (6th Cir. 2005)); *Myron v. Terhune*, 476 F.3d 716, 718 (9th Cir. 2007).

Under the relevant authority, therefore, as the result of his conviction, Plaintiff "has been constitutionally deprived of his liberty to the extent that the State may confine him and subject him to the rules of its prison system so long as the conditions of confinement do not otherwise violate the Constitution." *Meachum*, 427 U.S. at 224.  Plaintiff nevertheless alleges Defendants' decision to place him in segregation in the SMU for a prolonged period, and to

transfer him to Florida at the conclusion of his "administrative" segregation,[4] without the benefit of a meaningful hearing, violated his constitutional protections.

In *Hewitt v. Helms*, 459 U.S. 460 (1983), the Supreme Court held that the "narrow range of protected liberty interests" prisoners maintain upon lawful incarceration does not include an interest of confinement in the general population of a prison. *Id.* at 467. The Court wrote, "administrative segregation is the sort of confinement that inmates should reasonably anticipate receiving at some point in their incarceration." *Id.* at 468. In addition, a prison policy or regulation does not implicate a liberty interest unless the conditions of confinement involve an "atypical and significant hardship." *Sandin v. Conner*, 515 U.S. 472, 483 – 84 (1995).[5] In such a case, due process is satisfied with "an informal, nonadversary review of the information supporting … administrative confinement, including whatever statement [the inmate] wished to submit, within a reasonable time after confining him to administrative segregation." *Id.* at 472. *See also id.* at 476 ("An inmate must merely receive some notice of the charges against him and an opportunity to present his views to the prison official charged with deciding whether to transfer him to administrative segregation.").

---

[4] Plaintiff alleges detention in segregation within the SMU, which he asserts is contained in the Maine State Prison's "supermax" building. He does not explain how segregation in the Maine State Prison's SMU involves conditions more restrictive than administrative segregation in another Maine State Prison facility.

[5] In *Sandin*, the Supreme Court abrogated its ruling in *Hewitt* that a state's violation of a mandatory policy or procedure could implicate a constitutionally-protected liberty interest. *Wilkinson v. Austin*, 545 U.S. 209, 222 – 23 (2005). The Court did not otherwise disturb the *Hewitt* reasoning. *Id.* at 228 – 29 (citing *Hewitt* in support of the adequacy of "informal, nonadversary procedures").

Defendants argue that Plaintiff's allegations demonstrate he received the informal review described in *Hewitt v. Helms*. (Motion at 3.) Concerning the periodic review, the Supreme Court articulated the following standard:

> Prison officials must engage in some sort of periodic review of the confinement of such inmates. This review will not necessarily require that prison officials permit the submission of any additional evidence or statements. The decision whether a prisoner remains a security risk will be based on facts relating to a particular prisoner – which will have been ascertained when determining to confine the inmate to administrative segregation – and on the officials' general knowledge of prison conditions and tensions, which are singularly unsuited for "proof" in any highly structured manner. Likewise, the decision to continue confinement of an inmate pending investigation of misconduct charges depends upon circumstances that prison officials will be well aware of – most typically, the progress of the investigation. In both situations, the ongoing task of operating the institution will require the prison officials to consider a wide range of administrative considerations ….

*Hewitt*, 459 U.S. at 477 n.9. Because the review in *Hewitt* occurred "less than a month after the initial decision to confine Helms to administrative segregation," the Court found the record "sufficient to dispel any notions that the confinement was a pretext." *Id.*

Here, according to Plaintiff, Defendants conducted periodic reviews. The adequacy of the review process, however, is not the sole inquiry. In *Hewitt*, the Supreme Court recognized an institution can lawfully maintain an inmate in administrative segregation only pending the completion of an investigation. Although the Court acknowledged administrative segregation could be long enough to require "some sort of periodic review," the Court specifically cautioned that "administrative segregation may not be used as a pretext for indefinite confinement of an inmate." *Id.* at 477 n.9. The questions, therefore, are whether the extended duration of Plaintiff's confinement in segregation required further process, and whether Defendants' transfer of Plaintiff to an out-of-state facility, which transfer also included a

charge against the funds maintained in his prison account, constitutes a constitutional deprivation.

> a.      *Duration and conditions of segregated confinement*

Plaintiff's entitlement to more process than the periodic review outlined in *Hewitt* is limited to conditions of confinement that impose an "atypical and significant hardship … in relation to the ordinary incidents of prison life." *Sandin,* 515 U.S. at 484.  A reasonable period of confinement in segregation, without more, is not an atypical and significant hardship.  *Id.* at 486 (holding that prisoner placed in segregation for 30 days did not experience "a major disruption in his environment").  The issue is whether Plaintiff's alleged experience imposed an atypical and significant hardship.

In *Wilkinson v. Austin*, the Supreme Court explained:

> After *Sandin,* it is clear that the touchstone of the inquiry into the existence of a protected, state-created liberty interest in avoiding restrictive conditions of confinement is not the language of regulations regarding those conditions but the nature of those conditions themselves "in relation to the ordinary incidents of prison life." *Id.,* at 484, 115 S. Ct. 2293.

> Applying this refined inquiry, *Sandin* found no liberty interest protecting against a 30-day assignment to segregated confinement because it did not "present a dramatic departure from the basic conditions of [the inmate's] sentence." *Id.,* at 485, 115 S. Ct. 2293.  We noted, for example, that inmates in the general population experienced "significant amounts of 'lockdown time'" and that the degree of confinement in disciplinary segregation was not excessive. *Id.,* at 486, 115 S. Ct. 2293.  We did not find, moreover, the short duration of segregation to work a major disruption in the inmate's environment. *Ibid.*

545 U.S. at 223.

In *Wilkinson*, the Court reviewed whether Ohio prisoners have a liberty interest in avoiding placement in the Ohio State Penitentiary (OSP), described as a supermax facility

imposing "a highly restrictive form of solitary confinement," where "almost every aspect of an inmate's life is controlled and monitored." *Id.* at 214. The conditions at OSP were described as follows:

> Inmates must remain in their cells, which measure 7 by 14 feet, for 23 hours per day. A light remains on in the cell at all times, though it is sometimes dimmed, and an inmate who attempts to shield the light to sleep is subject to further discipline. During the one hour per day that an inmate may leave his cell, access is limited to one of two indoor recreation cells. Incarceration at OSP is synonymous with extreme isolation. In contrast to any other Ohio prison, including any segregation unit, OSP cells have solid metal doors with metal strips along their sides and bottoms which prevent conversation or communication with other inmates. All meals are taken alone in the inmate's cell instead of in a common eating area. Opportunities for visitation are rare and in all events are conducted through glass walls. It is fair to say OSP inmates are deprived of almost any environmental or sensory stimuli and of almost all human contact.

> Aside from the severity of the conditions, placement at OSP is for an indefinite period of time, limited only by an inmate's sentence. For an inmate serving a life sentence, there is no indication how long he may be incarcerated at OSP once assigned there.

*Id.* at 214 – 15.

Observing that the Courts of Appeals "have not reached consistent conclusions for identifying the baseline from which to measure what is atypical and significant in any particular prison system," the Supreme Court did not resolve the issue, but instead held that the conditions of confinement at OSP "impose[d] an atypical and significant hardship under any plausible baseline." *Id.* at 223. Significant to the Court's conclusion, after an initial 30-day review, placement would be reviewed only annually, and placement in OSP disqualified inmates for parole. *Id.* at 224.

Having identified a liberty interest, the Court considered the adequacy of Ohio procedures. On this issue, the Court "declined to establish rigid rules and instead embraced a framework to evaluate the sufficiency of particular procedures," *id.*, which framework consists of three factors:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Id.* at 224 – 25 (quoting *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976)). Of the three factors, the State's interest in ensuring safety and security "is a dominant consideration." *Id.* at 227.

The Court found the Ohio procedures were adequate where they provided "informal, nonadversary procedures comparable to those [the Court] upheld in *Greenholtz* and *Hewitt*," and held that "no further procedural modifications are necessary in order to satisfy due process under the *Mathews* test."[6] *Id.* at 229. In particular, the Court found no need for a procedure that permits a prisoner to call witnesses. *Id.* at 228.

The Court viewed favorably the Ohio procedure that provided the OSP placement process would terminate, and placement would not be authorized or continue, "if one reviewer declines to recommend OSP placement," thereby avoiding a situation in which "a later reviewer could overturn [a prisoner favorable] recommendation without explanation." *Id.* at 226. While the Court did not prohibit a procedure that authorized a subsequent reviewer to

---

[6] In *Greenholtz v. Inmates of Neb. Penal and Correctional Complex*, 442 U.S. 1 (1979), the Court considered the adequacy of state parole proceedings and upheld Nebraska parole procedure because it "affords an opportunity to be heard, and when parole is denied it informs the inmate in what respects he falls short of qualifying for parole." *Id.* at 16.

reverse a finding favorable to an inmate, the Court noted the Ohio procedure "could be the subject of an appropriate future challenge" if an inmate could demonstrate the procedure "did not in practice operate in this fashion, resulting in cognizable injury." *Id.* at 230.

  b.  *Transfer to an out-of-state facility*

The Supreme Court and the First Circuit Court of Appeals have held that interstate transfers of prisoners do not require a different analysis than intrastate transfers based simply on the fact that the prisoner is transferred to another state. *Olim v. Wakinekona*, 461 U.S. 238, 245 – 46 (1983) (involving transfer from Hawaii to California); *Sisbarro v. Warden, Mass. State Penitentiary*, 592 F.2d 1, 3 (1st Cir. 1979) (involving transfers from Massachusetts to Connecticut, then to Pennsylvania, then to Kansas). Simply stated, "[c]onfinement in another State, unlike confinement in a mental institution, is 'within the normal limits or range of custody which the conviction has authorized the State to impose.'" *Olim*, 461 U.S. at 247 (quoting *Meachum,* 427 U.S. at 225). Accordingly, the issue is whether the transfer to the destination prison entails an atypical and significant hardship and, if so, the sufficiency of the process provided the prisoner. Because Plaintiff alleges segregated confinement and asserts that the Zephyrhills Correctional Institution is a maximum security facility,[7] his procedural

---

[7] Plaintiff's opposition to the motion to dismiss includes the assertion that Zephyrhills is a maximum security institution. (ECF No. 10 at 1 – 2.) Additionally, he alleges that his segregation in Florida involved sharing a cell with "aggressively psychotic" and "predatory" inmates. (*Id.* at 2.) This Court has construed complaints filed by pro se litigants in light of supplemental factual representations contained in responses to motions to dismiss. *E.g., Wall v. Dion,* 257 F. Supp. 2d 316, 318 (D. Me. 2003) (citing *Gray v. Poole,* 275 F.3d 1113, 1115 (D.C. Cir. 2002)); *Bridges v. Ouellette,* No. 2:13–CV–00082–NT, 2013 WL 5755588, at *4 (D. Me. Oct. 23, 2013). *See also Smith v. Dart,* 803 F.3d 304, 311 (7th Cir. 2015) (finding that the district court should have considered letters filed by pro se party, which contained additional factual representations, when ruling on a motion to dismiss).

challenge to the transfer warrants a similar consideration to his challenge to placement in the Maine State Prison SMU.

#### c.     Deprivation of property

Plaintiff complains Defendants withdrew $156.76 from his inmate account to satisfy the cost of forwarding his property to Florida.  Of relevance, the First Circuit determined that a prison disciplinary sanction that deprives a prisoner of $75 without adequate process states a constitutional claim for deprivation of property. *Coombs v. Welch*, No. 15-1776 (1st Cir. May 9, 2016) (citing *Reynolds v. Wagner*, 128 F.3d 166, 179 (3d Cir. 1997)).

#### d.     Analysis

As explained above, Supreme Court precedent establishes that a prolonged confinement in segregation could potentially generate a liberty interest protected by the Due Process Clause.  Given Plaintiff's assertions regarding the length of time he was in segregation and the process by which he remained in segregation, Plaintiff has alleged sufficient facts to state an actionable claim.[8]  Whether the ASR afforded sufficient process depends on a multi-factor analysis that ordinarily requires an evidentiary record.[9]  The record at this stage of the

---

[8] Plaintiff's emphasis on the duration of his confinement in segregation is not necessarily dispositive of the liberty issue.  *See*, *e.g.*, *Jones v. Baker*, 155 F.3d 810 (6th Cir. 1998) (affirming entry of summary judgment where prisoner spent two and one-half years in administrative segregation, based on the nature of the underlying charges that required administrative confinement).  Moreover, restrictive conditions are not necessarily atypical.  *See*, *e.g.*, *Rezaq v. Nalley*, 677 F.3d 1001, 1011 (10th Cir. 2012) (discussing alternative approaches taken by the circuit courts "to identify the appropriate baseline for assessing what constitutes an 'atypical and significant hardship' on inmates" and outlining four factors in use in the Tenth Circuit).

[9] It does not appear that the ASR process has ever been assessed in the context of a procedural due process claim based on prolonged confinement in the Maine State Prison SMU.  Other district courts appear to have relied on evidentiary records rather than legal conclusions to resolve similar claims.  *See*, *e.g.*, *Payne v. Friel*, 919 F. Supp. 2d 1185, 1187 (D. Utah 2013); *Standley v. Ryan*, No. 2:10-CV-01867, 2012 WL 3288728, 2012 U.S. Dist. Lexis 113246 (D. Ariz. Aug. 13, 2012); *Toevs v. Reid*, No. 1:06-CV-01620, 2010 WL 4388191, 2010 U.S. Dist. Lexis 23036 (D. Colo. Oct. 28, 2010), *aff'd on other grounds*, 646 F.3d 752 (10th Cir. 2011),

proceedings is lacking.  For example, the record presently does not include the administrative policy or regulation, nor the complete administrative record associated with the reviews of Plaintiff's confinement in segregation.  Plaintiff's due process claim, therefore, cannot be resolved on Defendants' motion to dismiss.[10]

### 2.      Deliberate indifference / cruel and unusual punishment

Plaintiff alleges his confinement in segregation exacerbated underlying mental and physical conditions and that Defendants acted with deliberate indifference to his well-being while he was in segregation.  Defendants argue the conditions described in Plaintiff's complaint do not "rise to the level of [cruel and unusual] punishment."  In support of their argument, Defendants offer as a comparison the conditions addressed by the Supreme Court in *Hutto v. Finney*, 437 U.S. 678 (1978) (describing background facts involving filth and vandalism, rampant violence, overcrowding, risk of disease, and an inadequate diet).

> The Eighth Amendment's ban on inflicting cruel and unusual punishments, made applicable to the States by the Fourteenth Amendment, "proscribe[s] more than physically barbarous punishments." *Estelle v. Gamble,* 429 U.S. 97, 102, 97 S.Ct. 285, 290, 50 L.Ed.2d 251. It prohibits penalties that are grossly disproportionate to the offense, *Weems v. United States,* 217 U.S. 349, 367, 30 S.Ct. 544, 549, 54 L.Ed. 793, as well as those that transgress today's "'broad and idealistic concepts of dignity, civilized standards, humanity, and decency.'" *Estelle v. Gamble, supra,* at 102, 97 S.Ct., at 290, quoting *Jackson v. Bishop,* 404 F.2d 571, 579 (CA8 1968).

---

*amended and superseded on reh'g,* 685 F.3d 903 (10th Cir. 2012), and *aff'd on other grounds,* 685 F.3d 903 (10th Cir. 2012); *Malloy v. Rowley*, No. 1:08-CV-02303, 2010 WL 4226146, 2010 U.S. Dist. Lexis 113154 (D. Md. Oct. 25, 2010); *El-Tabech v. Clarke*, No. 4:04-CV-03231, 2007 WL 1487148, 2007 U.S. Dist. Lexis 36719 (D. Neb. May 18, 2007).  Moreover, development of a record will in any event be necessary to address Plaintiff's equal protection and retaliation claims.

[10] Defendants did not offer a separate argument to support their request for the dismissal of Plaintiff's property deprivation claim.

*Hutto v. Finney*, 437 U.S. 678, 685 (1978).

To establish a constitutional violation based on the conditions of confinement, a prisoner must meet both objective and subjective criteria; i.e., he must "establish that from an objective standpoint, the conditions of his confinement deny him the minimal measure of necessities required for civilized living" and "that, from a subjective standpoint, the defendant was deliberately indifferent to inmate health or safety." *Surprenant v. Rivas*, 424 F.3d 5, 18 – 19 (1st Cir. 2005). The objective component is "contextual and responsive to 'contemporary standards of decency,'" but viable claims require "extreme deprivations." *Hudson v. McMillian*, 503 U.S. 1, 8 – 9 (1992).

The alleged conditions are not objectively inconsistent with the conditions discussed by the Supreme Court in *Wilkinson*. In that case, the Supreme Court concluded that indefinite segregated confinement of extended duration that involved restrictions similar to Plaintiff's was constitutional provided the prison administrators complied with procedural due process. In other words, the conditions alone do not violate the Cruel and Unusual Punishments Clause.

Plaintiff also alleges Defendants are responsible for events that transpired in Florida. Assuming, arguendo, that conditions at the Zephyrhills Correctional Institution were materially worse than the conditions in the Maine State Prison SMU, such that they would satisfy the objective component of the claim,[11] Plaintiff's allegations do not support a claim of deliberate indifference toward cruel and unusual conditions of confinement. That is, Plaintiff has not alleged facts to suggest Defendants knew Plaintiff would be exposed to any

---

[11] Plaintiff states that he spent his first 438 days in Florida in maximum security and was placed in a cell with dangerous individuals. He also asserts he was assaulted and has "brutal facial pictures" of his injuries. (ECF No. 10 at 2.)

special harm in Florida based on the conditions of confinement he would experience in Florida.

Plaintiff's attempt to assert a claim based on Defendants' alleged deliberate indifference to the way in which segregated confinement in the SMU negatively impacted his health also fails.  To sustain such a claim, a plaintiff must allege facts that describe "a sufficiently substantial 'risk of serious damage to [the inmate's] future health.'"  *Farmer v. Brennan*, 511 U.S. 825, 843 (1994) (quoting *Helling v. McKinney*, 509 U.S. 25, 35 (1993)). A medical need is "serious" if it has been diagnosed by a physician as mandating treatment, or is so obvious that even a lay person would recognize a need for medical intervention.  *Leavitt v. Corr. Med. Servs.*, 645 F.3d 484, 497 (1st Cir. 2011); *Gaudreault v. Mun. of Salem*, 923 F.2d 203, 208 (1st Cir. 1990), *cert. denied*, 500 U.S. 956 (1991).  The subjective standard concerns the individual culpability of the defendant.  A plaintiff must present evidence that the defendant possessed a culpable state of mind amounting to "deliberate indifference to an inmate's health or safety."  *Farmer*, 511 U.S. at 834 (internal quotation marks omitted). Deliberate indifference is akin to criminal recklessness, "requiring actual knowledge of impending harm, easily preventable."  *Feeney v. Corr. Med. Servs., Inc.*, 464 F.3d at 162 (quoting *Watson v. Caton*, 984 F.2d 537, 540 (1st Cir. 1993)).  The focus of the deliberate indifference analysis "is on what the [defendants] knew and what they did in response."  *Burrell v. Hampshire Cnty.*, 307 F.3d 1, 8 (1st Cir. 2002). "[T]he Constitution requires that care be not so inadequate as to shock the conscience."  *Perry v. Roy*, 782 F.3d 73, 78 (1st Cir. 2015) (quotation marks omitted).

Plaintiff alleges his longstanding mental health condition and restless leg syndrome intensified due to his prolonged confinement in segregation.  Plaintiff, however, has not asserted facts from which one could plausibly conclude Defendants knew of a condition or combination of conditions that produced a risk of serious damage to Plaintiff's future health, which condition Maine State Prison medical personnel failed to treat.  Similarly, Plaintiff has not asserted an actionable medical-related claim based on his incarceration in Florida.

### 3.        Equal protection / retaliation

"The Fourteenth Amendment's Equal Protection Clause prohibits a state from treating similarly situated persons differently because of their classification in a particular group." *Mulero-Carrillo v. Roman-Hernandez*, 790 F.3d 99, 105 – 106 (1st Cir. 2015), *cert. denied,* 136 S. Ct. 808 (2016).  Generally, to state an equal protection claim, a plaintiff must allege facts that support a plausible inference that "compared with others similarly situated, the plaintiff was selectively treated based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person." *Id.* at 106 (quoting *Barrington Cove Ltd. P'ship v. R.I. Hous. & Mortg. Fin. Corp.*, 246 F.3d 1, 7 (1st Cir. 2001)).  Absent such facts, decisions related to a person's rights, privileges, and benefits under state law require only a rational basis.  *Id.*[12]

Plaintiff alleges his transfer to the Zephyrhills Correctional Institution was arranged to retaliate against him for seeking judicial review in state court of his prolonged confinement

---

[12] Additionally, the Supreme Court has recognized that in some circumstances a person can be a "class of one" where the evidence demonstrates that the plaintiff was "intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment."  *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000) (per curiam).

in the SMU.  Plaintiff further argues that many prisoners are charged with threatening, and are not placed in segregation for such a long period and are not transferred to an out-of-state facility.  (ECF No. 10 at 14 – 15.)  Plaintiff thus asserts he was "selectively treated based on impermissible considerations such … [an] intent to inhibit or punish the exercise of constitutional rights." *Id*.[13]

Because Plaintiff's equal protection theory relies on a retaliatory purpose, logically the claim should be assessed in the context of the elements of his retaliation claim.  To establish a claim of retaliation, an inmate must allege (1) that the inmate engaged in conduct that is protected by the First Amendment; (2) that a defendant took adverse action against the inmate because of the inmate's protected conduct; and (3) that the adverse action would deter an inmate of ordinary firmness from exercising his or her First Amendment rights.  *Hannon v. Beard,* 645 F.3d 45, 48 (1st Cir. 2011); *Davis v. Goord,* 320 F.3d 346, 352 (2d Cir. 2003); *Thaddeus–X v. Blatter,* 175 F.3d 378, 398 (6th Cir. 1999).

Plaintiff contends Defendants transferred him to Florida because he commenced a state court proceeding against Defendants in accordance with Maine's Administrative Procedures Act. (Complaint ¶¶ 57-63).  Plaintiff's state court filing, which evidently challenged his ongoing confinement in the SMU and the procedure used to maintain him in segregation, qualifies as protected activity.  Additionally, a transfer to an out-of-state prison could be

---

[13] *See also Sandin,* 515 U.S. at 487 n. 11, ("Prisoners ... retain other protection from arbitrary state action even within the expected conditions of confinement.  They may invoke the First and Eighth Amendments and the Equal Protection Clause of the Fourteenth Amendment where appropriate …."); *Rouse v. Benson*, 193 F.3d 936, 940 (8th Cir. 1999) ("Prison authorities have a great deal of discretion in running their institutions, and such discretion normally outweighs any interest that any individual prisoner may have in remaining housed in a particular prison.  Nevertheless, a prisoner cannot be transferred in retaliation for his exercise of constitutionally protected rights …." (citation omitted)).

considered by a reasonable factfinder to be sufficiently adverse to deter an inmate of ordinary firmness from exercising First Amendment rights.

The issue is whether Plaintiff's somewhat conclusory allegation of retaliatory purpose is sufficient to state a claim. The First Circuit has noted "a retaliatory state of mind typically is not susceptible to proof by direct evidence that can be averred in a complaint." *Ferranti v. Moran*, 618 F.2d 888, 892 (1st Cir. 1980). Plaintiff evidently relies on the temporal relationship between the filing of the state court action and his transfer as evidence of a retaliatory purpose. Plaintiff filed in state court on July 20, 2014, and his Florida transfer occurred on October 28, 2014. Under certain circumstances, the three-month period could conceivably be sufficient to support a prima facie causation argument. *See id.* ("[A]n inference of retaliation is warranted from the chronology of events recited, and from the allegation that appellant's first suit complains of prison conditions and is directed at prison officials." (citing *McDonald v. Hall*, 610 F.2d 16, 18 (1st Cir. 1979)); *see also Sanchez–Rodriguez v. AT & T Mobility P.R., Inc.*, 673 F.3d 1, 15 (1st Cir. 2012) (holding in employment context that approximately three-month period between protected activity and adverse action was "close enough to suggest causation" for purposes of a prima facie claim); *but see King v. Town of Hanover*, 116 F.3d 965, 968 (1st Cir. 1997) (holding that approximately five-month period between protected activity and adverse action did not support an inference of causation for purposes of a prima facie claim without some additional evidence of retaliatory purpose). Because Plaintiff's approximate three-month period, under certain circumstances, could be sufficient to sustain a retaliation claim, Plaintiff has at this

stage of the proceedings asserted facts to support his allegation of retaliation.  He has, therefore, asserted an actionable claim for denial of equal protection and retaliation.

## CONCLUSION

Based on the foregoing analysis, I recommend the Court grant in part Defendants' motion to dismiss. (ECF No. 6.)  In particular, I recommend the Court dismiss Plaintiff's Eighth Amendment claims.  I further recommend the Court deny the motion as to Plaintiff's Fourteenth Amendment Due Process claim, Fourteenth Amendment Equal Protection claim, and First Amendment retaliation claim.

## NOTICE

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which *de novo* review by the district court is sought, together with a supporting memorandum, within fourteen (14) days of being served with a copy thereof.  A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.

Failure to file a timely objection shall constitute a waiver of the right to *de novo* review by the district court and to appeal the district court's order.

/s/ John C. Nivison
U.S. Magistrate Judge

Dated this 17th day of February, 2017.