United States District Court
~ District of Maine ~

John J. Conlon,
    Plaintiff,
v.                                    Case No:
Rodney Bouffard, et al.,              1:16-CV-372-JAW
    Defendants.

Declaration of Supplemental Factual Information Regarding The Close Management (CM) Unit at Suwannee Correctional Institution (SCI).

(1) Now Comes The Plaintiff pro se in the above titled action who now provides this Court with Supplemental Factual Information Regarding the Conditions within the CM Unit at S.C.I.

(2) Plaintiff is aware that this Supplemental Factual Information is tardy; however, he was not sufficiently knowledgeable[1] of the importance of

---

[1] Pro se litigants are held to less stringent standards than formal pleadings by lawyers. Haines v. Kerner, 404 U.S. 519, 520 (1972); Erickson v. Pardus, 551 U.S. 89, 94 (2007) (per curiam).

being particularly specific at the commencement of his pleadings, he felt generalities would suffice there.

(3) Plaintiff has assumed that specifics such as the particular conditions of his C.M. confinement would be drawn out later through such tactics as "discovery" or any such other legal tool(s).

(4) Plaintiff believes that all the recent pleadings in this case have all stemmed from Defendant's October 11, 2016, Motion to Dismiss.

(5) Therefore, the following supplemental factual information should be admissible:[2]

   a) Plaintiff introduces Chapter 33-601.800 of the Florida Administrative Code (FAC) that explains the rules, regulations, policies, procedures, etc., of C.M. confinement statewide. (SEE ATTACHMENT A).

---

[2] This Court has construed complaints filed by pro se litigants in light of supplemental factual information contained in responses to motions to dismiss. E.g., Wall v. Dion, 257 F.Supp.2d 316, 318 (D. Maine 2003) (citing Gray v. Poole, 275 F.3d 1113, 1115 (D.C.Cir. 2002)).

b) Plaintiff was admitted to the CMII wing of SCI on or about January 28, 2015, where he served six months of CMII confinement successfully and then went on to serve six months of CMIII, also successfully.③

c) Besides the restrictions noted within Chapter 33-601.800 of the F.A.C., Plaintiff also experienced the following rules and restrictions:

(i) Heavy overhead fluorescent lighting, controlled from outside cell, stayed on 19-20 hours per day, dimmed slightly at midnight and turned back on at 5:00 A.M.

(ii) These lights were used as a punishment tool for the whole wing if the officers were dissatisfied

---

③ Plaintiff was NOT convicted of any infractions of the disciplinary codes of the Florida Department of Corrections nor the Maine Department of Corrections at all times relevant here. Since Condon's release from the CM Unit at SCI on January 6, 2016, he has continued his clear conduct record and received an "above satisfactory" performance rating from Zephyrhills C.I., his permanent "camp." (SEE ATTACHMENT B).

with the conduct on the wing or with an individual who had misconduct on the wing. In those cases, the lights would be left on in ALL the cells, without dimming, until 2:00-3:00 A.M.

(iii) Another mass punishment tool was the shutting off of ALL water to ALL cells (toilet & sink), usually at night, and for hours at a time! This water punishment (SEE: p. 7 of Attachment A) took place approximately ten times while Condon was on CM II.

(iv) During Condon's entire time on CM, he could not have in his possession ANY type of eating utensil... nor a bowl or plate. He also could not have a drinking cup of any kind at all. During meals, these items came with the tray but had to be returned, item by item, through the food slot, to the officer at the conclusion of the meal.

(v) During the entire year where plaintiff lived in a cell an average of (bare minimum) 23 hours per day, there was never a chair to sit on or a table to write on. There were NO shelves of ANY kind in these cells and NOT a single hook on the wall in which to hang clothes — not even one for a wash-rag or towel.

No pictures were to be displayed anywhere and the lone narrow window was sprayed half way up with "frost" so one could not look out of it unless he stood on the bed, which was not allowed.

(vi) <u>Recreation</u>: As far as recreation ("Rec") was concerned on the CM II wing Condon was placed (each "wing" of the SCI CM unit had 28 cells... 14 on top and 14 directly below), the inmates might get two indoor rec periods per week and maybe one or two outside if it was a good week and there weren't too many of those. Each rec period was an hour to an hour and a half. However, the inside Rec on CM II was <u>so stressful</u> Plaintiff hardly went at all. Specifically, to "recreate" on the bottom floor, inmates had to be hand-cuffed in the front with the cuffs attached by pad-lock to a belly chain so inmates could not lift their arms above their armpits. The infamous "Black Box" was then placed over the cuffs to add further restriction to movement. Lastly, the inmate was leg-chained. We had to make any phone call we were allowed <u>like that</u>, otherwise, we were instructed to sit on hard benches in front of a T.V. and no talking. One could not walk around and a limit of about 12 inmates were let out at a time to "Rec."

Outside rec on CM II required plaintiff to be hand-cuffed behind back through his food slot and then escorted outside to cages of about 8' x 14'. The cuffs were removed once inside the rec cage and there was a combination pull-up and dip-bar inside each cage. We stayed out there upwards of two hours.

CM III wing inside rec was the same as CM II minus all the "jewelry" or chains, cuffs & leg irons. CM III was designed to be more "relaxed" because it was the last stage before transfer to an open population if completed successfully (Florida has over 100,000 inmates - third largest prison population in country). Outside rec on CM III was the same as CM II (minus the cuffs on the way out).

Each CM wing had four showers on bottom tier and four on second tier. We showered three times per week and were escorted to the showers on CM II cuffed behind back while CM III inmates were released out of their cell, cuff free.

(vii) Outside of these very sporadic rec periods and the showers, plaintiff spent his time inside these naked cells, again, with no chair in which to sit on, no table to write

ON, NO DRINKING CUP, NO SPOON, NO PICTURES ON WALL, NO HOOKS, A RESTRICTED CANTEEN offering (NO COFFEE), WATER AND LIGHT punishment and A TREMENDOUS AMOUNT of VERBAL ABUSE from THE CM officers BECAUSE THIS (CM) WAS WHERE THE FLORIDA "BAD BOYS" WERE SENT. THE Officers THERE WERE EXTREMELY DANGEROUS for AN INMATE TO GET INTO CONFLICT WITH.

THE DEFENDANTS, By SENDING CONDON TO THE F.D.O.C.'s WITH THE UNPROVEN INFORMATION THAT CONDON "DID THREATEN" STAFF AND "WAS" ASSAULTIVE (TOTALLY FALSE information)(AND information THE CM officers DIDN'T "COTTON" TO), ARE THE ONES RESPONSIBLE for CONDON TO HAVE TO Suffer A year of THIS CM punishment UNIT. FOR WHAT??

PLAINTIFF CONDON SWEARS THAT The ABOVE Supplemental FACTUAL information IS TRUE AND HAS WITNESS (A CELL-MATE AT CM) TO Back-up SAME.

IN Summary, Plaintiff TRUSTS THE COURT WILL ALLOW THIS DECLARATION of Supplemental FACTUAL INFORMATION, complete with ATACH-MENTS, be ADMISSIBLE TO THE RECORD HERE.

DATED: March 10th, 2017

JOHN J. CONDON, pro se

– Certificate of Service –

I hereby certify that, on this date, I caused one copy of this filing to be served upon Diane Sleek, A.A.G., Office of the Attorney General, Six State House Station, Augusta, Maine, 04333, by having the same deposited in the United States Mail, postage pre-paid.

Dated this 10th Day of March, 2017

John J. Conlan pro se
#148840
RMC/West Unit
PO Box 628
Lake Butler, FLA 32054