UNITED STATES DISTRICT COURT
- DISTRICT OF MAINE -

John Jay Condon, ) CASE #:
  Plaintiff, )
v. ) 1:16-cv-372-JAW
Rodney Bouffard, et al., )
  Defendants. )

Reply to Objection To Recommended Decision

Now comes the Plaintiff, pro se here, who replies to the Defendants March 3, 2017, Objection To Recommended Decision.

- Preface -

Again, Plaintiff is a pro se litigant doing the best he can to litigate for justice where justice is due. Here, Plaintiff is not trying to take advantage of his pro se status,[1] yet there are some legal tactics, proce-

---

[1] Pro se litigants are held to less stringent standards than formal pleadings by lawyers. Haines v. Kerner, 404 U.S. 519, 520 (1992)

DURES, MOVES AND MANEUVERS HE IS SIMPLY NOT AWARE OF. NEVERTHELESS, AFTER CAREFUL STUDY OF THE RECOMMENDED DECISION HERE, PLAINTIFF AGREES WITH THE COURTS ASSERTION IN THE DENIAL OF PLAINTIFF'S MOTION FOR APPOINTMENT OF COUNSEL THAT: "... THE LAW AND FACTS RELEVANT TO PLAINTIFF'S CASE ARE SUFFICIENTLY STRAIGHTFORWARD..."

PLAINTIFF CONTENDS THE ALLEGED FACTS AND FEDERAL CONSTITUTIONAL CLAIMS HE HAS PUT FORTH ARE VERY DAMAGING TO THE DEFENDANTS. THEREFORE, THE PLAINTIFF WILL DO HIS BEST TO PUT FORTH HIS PLEADINGS IN A LEGITIMATELY LEGAL AND TIMELY FASHION LETTING JUSTICE, IF IT BE DUE, RUN ITS TRUE COURSE.

## PLAINTIFF'S REPLY TO DEFENDANT'S OBJECTION

WHAT PLAINTIFF CAN DEDUCE FROM READING & RE-READING THE DEFENDANT'S MARCH 3, 2017, OBJECTION TO RECOMMENDED DECISION IS THE FOLLOWING: THE DEFENDANTS CONTINUALLY TRY TO MUDDY THE LEGAL WATERS IN AN ATTEMPT TO HAVE THE PRO SE LITIGANT WADE INTO UNDERWATER LEGAL CAVERNS THAT HAVE NO EXIT. THAT'S NOT GOING TO HAPPEN.

THAT BEING STATED, IT IS APPARENT TO

this plaintiff litigator that the defendants, by virtue of their objection to the Recommended Decision, have surrendered, and therefore defaulted, on the following constitutional claims plaintiff has levied against them, namely:

~ The Equal Protection Claim ~

(1) Plaintiff's claim that the defendants violated his 14th Amendment equal protection rights in that they treated him radically different than other Maine State Prison inmates who have been similarly situated. (Should something arise, the plaintiff contends a speedy motion for production of documents would put a sudden closure on any objections defendants may raise). Regarding this equal protection claim, the court noted on page 19 of its Recommended Decision that: " It (the equal protection claim) should be assessed in the elements of his (the plaintiff's) retaliation claim."

~ The Retaliation Claim ~

(2) First and foremost regarding this retaliation claim; again, plaintiff Condon sees no objection by the defendants to this First Amendment claim and concludes the defendants have surrendered, and thus defaulted, on same. Nonetheless, plaintiff will spell out the legal requirements of his 1st Amendment retaliation claim ~~~~ so as to put the

connecting lock between the two (the Equal Protection & Retaliation Claims).

## Discussion

Plaintiff Condon's retaliation claim centers around his exercising of his First Amendment right to file a lawsuit (1st Requirement: "Conduct protected by the First Amendment") and the Defendants retaliation against him for doing so by transferring him over 1,000 miles to the Florida Department of Corrections (FDOC) (2nd Requirement: Defendants took "Adverse Action" against Condon). Once Condon was out of the state, the Defendants moved for a dismissal based on the grounds that he was not on Administrative Segregation (Ad. Seg.) anymore nor was he in the state, and therefore, out of the jurisdiction of the Knox County Superior Court which was handling the Administrative Procedures Act (APA) petition (Docket # AP-14-23).

This transfer of Condon to the FDOC took place three months after he had filed his APA action (thus meeting the 3rd Requirements as follows):

a) "That the 'Adverse Action' would deter an inmate of ordinary firmness from exercising his First Amendment right." Hannon v. Beard, 645 F.3d 45, 48 (1st Cir. 2011); Davis v. Goord, 320 F.3d 346, 352 (2nd Cir. 2003); Thaddeus-X v. Blatter, 175 F.3d 378, 398 (6th Cir. 1999) and

b) That Condon must show a "causal relationship" between the protected

activity (the lawsuit) and the adverse action taken (the transfer). Plaintiff filed his APA petition on July 20, 2014, and three months later on October 28, 2014, he found himself on I-95 heading to Florida. This locks in the causal relationship between the two. (Three month period between the protected activity and the adverse re-action close enough to meet the causal standard) See Ferranti v. Moran, 618 F.2d 888, 892 (1st Cir. 1980); McDonald v. Hall, 610 F.2d 16, 18 (1st Cir. 1979); Also Sanchez-Rodriguez v. AT and T Mobility P.R., Inc., 673 F.3d, 1, 15 (1st Cir. 2012).

— Circumstances re: 3 month period —

During that three month period, the plaintiff had put a lot of "pressure" (numerous filings & motions) on the Knox County Superior Court to do something in accordance with its rules, duties and stated regulations of the APA Act. (See plaintiff's original July 18, 2016, complaint pp. 8-9).

— Deprivation of Property Claim —

(3) Defendants also offered no objection to plaintiff's deprivation of property claim where defendants authorized the removal of $156.76 out of his prison account without his authorization nor with any kind of due process. As the court

noted on page 14 of its recommended decision: "... The First Circuit determined that a prison disciplinary action that deprives a prisoner of $75 without adequate process states a constitutional claim for deprivation of property." Coombs v. Welch, No. 15-1776 (1st Cir. May 19, 2016) (citing Reynolds v. Wagner, 128 F.3d 166, 179 (3rd Cir. 1997). Thus, it is apparent that Defendants defaulted on this claim also.

What the Defendants Chose to Object To:

The most damaging claim against the Defendants and the one they chose to defend most vigorously (and with good reason) is the lack of meaningful due process Condon received at MSP which resulted in the prolonged 673 days of segregated confinement, inclusive of, and directly related to, the transfer to the FDOC. The transfer to Florida and the subsequent assignment to the Close Management (CM) unit at Suwannee Correctional Institution (SCI) resulted in Condon experiencing conditions of confinement that presented an "atypical and significant hardship" on him. Sandin v. Conner, 515 U.S. 472, 483-84 (1995); Wilkinson v. Austin, 545 U.S. 209, 223 (2005). See also: Plaintiff's March 10, 2017 Declaration of Supplemental Factual Information pp. 3-7.

This 673 day of forced confinement resulted in an unconstitutional loss of the limited liberty Condon had enjoyed within the general population of Maine State Prison. The confinement of Condon was unconstitutional because the "due process" he received at MSP (which was the catylist or springboard for all of this — the Administrative Segregation Reviews (ASR) MDOC Policy No. 15.1) was not only unconstitutional on its face, but the reviews got warped, twisted, even "hood-winked" by the defendants into a sham, a hollow formality, and if the truth be told, a **RUSE** used to hold Condon in administrative segregation INDEFINITELY. Hewitt v. Helms 459 U.S. 460, 477 n.9 (1983) ("Ad. Seg. may not be used as a pretext for indefinite confinement of an inmate"), Wilkinson v. Austin, 545 U.S. 209, 224 (2005) ("The potentially indefinite nature of confinement weighs in favor of finding atypical and significant hardship"), Thompson-El v. Jones, 876 F.2d 66, 69 (8th Cir 1989) ("The fact that an investigation is characterized as 'ongoing' will not automatically justify keeping the inmate in administrative segregation.")

After over 120 days of being subject to this ASR process, Condon filed his APA action seeking judicial review of what he was going through. Three months into that action (which also allows suing for liability in

MONETARY DAMAGES), CONDON WAS ON I-95 TO FLORIDA.

Plaintiff has already made a three-pronged legal attack on this ASR process he received in MSP's Special Housing Unit (SHU) (Plaintiff's Original Complaint of July 18, 2016, pp. 2-6) (Plaintiff's November 19, 2016, Opposition to Motion to Dismiss pp. 8-12). Plaintiff will not try this Court's patience (nor his own) by any further discussion of the subtleties, tricks and ruses he was subjected to during the 235 days of this MSP ASR process that was feigning to satisfy (on paper) the weak conditions of due process set forth by Sandin v. Conner, 515 U.S. at 476, 483-84.

Defendants argue that the Due Process Condon received in Florida, by his own admission, was satisfactory. That is correct. However, the premise the FDOC had to use for subjecting Condon to their rigorous and highly restrictive CM program was solely based on the false information the Defendants supplied the FDOC with. Namely, that Condon was in segregated status (no mention of Administrative Segregation or "pending the results of" an investigation) "due to his RECENT threats made to staff and another inmate." (Appendix 'A' of Plaintiff's 'Opposition to Motion to Dismiss' (11/19/16)(emphasis mine). Thus, the FDOC's Institutional Classification Team (ICT) recommendation to place Condon on CM was, to quote: "Based on (Condon) being

in segregated status in Maine due to (Condon's) behavior toward staff and inmates." (Id. Appendix B-3). No mention that Condon was "under investigation" into the above behavior... just that he made "threats" and was "a management problem due to assaultive behavior towards staff and other inmates." Id. In other words, the inference being that Condon had done these prohibited acts and was in segregated status in Maine because of said conduct.

Based on that kind of information, Florida simply could not risk letting Condon loose in one of their prisons where he might "threaten" staff and be "assaultive" towards staff and inmates alike. The defendants' "dossier" on Condon left the FDOC I.C.T. with no alternative but to lock Condon up so they could first observe him. Inmate Condon, now appearing pro se, remembers well the November, 2014, I.C.T. meeting where he was to be classified. Condon had prepared a long "speech" to give in his defense of who he was and how he got to Florida. Having none of his property, legal or otherwise, his rambling emotional speech to the ICT was suddenly cut off by the 380 pound captain of the ICT who stated (very close to these exact words): "Condon, we don't know who you are... whether you are still violent or what... so we have no choice but to

recommend you for CMII." That put a sudden end to Condon's rambling "speech" and also a quick closure on Condon's classification hearing. It was plaintiff's word against the defendant's prepared dossier on Condon that lay at the ICT's desk.

This Court concluded in denying plaintiff's motion for appointment of counsel that "... the law and facts relevant to plaintiff's case are sufficiently straightforward such that plaintiff should be able to represent himself." Plaintiff is doing his best to present the facts in this case within the proper legal and linguistic key holes so that the justice he feels so adamantly due him, is rendered legally.

Dated this 22nd Day of March, 2017

/s/ John J. Condon
#148840
John J. Condon, pro se
#148840/RMC-West
Lake Butler, FLA 32054

— Certificate of Service —

I hereby certify that, on this date, I caused one copy of this filing to be served upon Diane Sleek, A.A.G., Office of the Attorney General, Six State House Station, Augusta, Maine 04333 — by having the same deposited in the U.S. Mail, postage prepaid. 3/22/17  /s/ John J. Condon