UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

JOHN JAY CONDON,
    PLAINTIFF,
  V.
RODNEY BOUFFARD, et al.,
    DEFENDANTS.

CIVIL NO. 1:16-CV-00372-JAW

PROVIDED TO ZEPHYRHILLS C.I. ON 5/30/17 FOR MAILING

## SECOND DECLARATION OF JOHN JAY CONDON

I declare that I am John Jay Condon, the plaintiff pro se in the above titled action and, pursuant to 28 U.S.C. 1746, I declare under the penalty of perjury that the following is true and correct:

I was sentenced to a natural life sentence to be served at Maine State Prison in 1982. State v Condon, 468 A.2d 1348 (Me. 1983). Soon after my arrival at MSP, I was transferred pursuant to 18 U.S.C 5003(a) into the custody of the United States Bureau of Prisons where I spent the first 30 years of that sentence housed in various United States Penitentiaries (USP's) across the country.

During the last 10 years in the Feds, I developed a plan to return to Maine after a completion of 30 years to attempt

one more effort to get out from under this natural life sentence. The appeal would primarily be based upon the massive anti-insanity defense publicity that was generated by the acquittal of John Hinckley, Jr., by reason of insanity, for his shooting of the President of the United States, Ronald Reagan. That verdict, out of Washington D.C., just <u>days</u> before the start of my trial, sent inflammatory publicity very hostile to the <u>use</u> of the insanity defense across the nation for weeks on end. My insanity defense, consisting of a colossal 15 mental institute commitments in five states and the District of Columbia in the ten years prior to the murders, was shot to hell.

In 2011, while being housed at the USP McCreary in Kentucky, I received a letter from a Scott McCafferty, MDOC Director of Classification, inquiring if I would like to return to Maine. That letter, seeming to me like a destiny fulfilling event in that it co-incided with my well thought-out plans to return to Maine after 30 years, was an easy one to reply to. After some bureaucratic paper work, I returned to Maine State Prison in April of 2012.

My plan was to hire an attorney, practiced in the field of the insanity defense, and after thoroughly briefing him on the phone or in person, have him do some research, leg work... whatever it took for him to get a firm handle on my case.

- 2 -

After all was said and done, I wanted him to give me his professional opinion on the best way forward with my case.

I went about scouting the small population at MSP① seeking references to attorneys known for their work with the insanity defense. After a few weeks, I felt I had come upon the perfect man for the job: Walter Hanstein, Esq., of Farmington, Maine. I got in touch with him, explained everything I wanted to and how little I had on hand material wise. We settled on a fee of $2,500 to be paid in stages, incrementally, should either of us make a judgment that my appeal chances were just too slim to warrant his continuation.

I raised some money through the trusted help of friends on the street, sent $1,000 to Hanstein who went to work by first digging up some archive transcripts of my trial from the Portland Superior Court.

The purpose of this declaration is not to discuss or re-hash my criminal case or appeal efforts, but using those facts as a backdrop here, to express the sincere importance of this trip back to Maine after 30 years. Important not only to my appeal,

---

① Maine State Prison was not only a rocket shot from the life I was experiencing in the United States penitentiaries, but also a severe culture shock. I much preferred the feds.

-2-

but also as to my upcoming conduct and behavior while at MSP! In other words, any potential freedom that I was striving for in the future depended, in part, upon my conduct and behavior in the present, while I was at MSP. It also gave me the opportunity to demonstrate to all MSP and MDOC officials, past and present, that there was a "night and day" difference between my present conduct & behavior as compared to the conduct and behavior of the John Jay Condon they witnessed and RECORDED prior to my trial.[2]

In short, my conduct while at MSP had to be exemplary, period. That was the golden rule I had laid down for myself when I first stepped out of the van onto the green grass of Maine State Prison: total control, serenity and turn the other cheek. And my conduct had been exemplary coming into Maine from the feds with only ONE disciplinary report in the last 16 years (gambling paraphanalia). In addition, my conduct at MSP

---

[2] While awaiting trial in 1981-82, I was being held at the Cumberland County Jail in Portland and causing such turmoil there that the Sheriff of Cumberland County petitioned the court to have me transferred to Maine State Prison for safe-keeping because he did not have the staff or facilities to hold me. That Sheriff, Martin Joyce, testified at my trial that he had never seen a more out-of-control prisoner in the 30 years he had been doing jail work. The next day I was transferred to the segregation unit of MSP where my manic behavior continued.

-4-

HAD BEEN EXEMPLARY from April of 2012, Right up to March 5, 2014, when this twisted set of threatening allegations torpedoed all that I had planned and worked up for.

I'm not stupid. I had over 32 years of prison convict life up to that point (32 years!) complete with confidential informants in every prison I've ever been in. I know the ropes. I've been around the block... I didn't just fall off some paddy-wagon and bounce into Maine State Prison. No, my entry into MSP was ten years in the making and methodical. I'm not just going to walk around and blow everything by saying I am going to kill someone! I have a lot at stake here!

(1) My appeal chances from a natural life or slow death sentence (and I'm 65 years old at that point);

(2) The money I raised from friends. Friends money. Money meant specifically for this appeal effort;

(3) The hiring of Walter Hanstein, Esq. and payments to him at that point (3/5/14) of $1,500.

I'm just going to toss all that overboard?? Somebody's got me mixed up with someone else. I'm not that gay. I'm upset and I have a right to be. Then these Defendants hold me down for 235 days for an "investigation" that was questionable (to say the least), and proceed to tell Florida that I DID threaten and that I WAS assaultive when I never saw the first iota of

-5-

due process on any of those "convictions," then Florida, after telling me I can't have any of my property in their system (32 years) except legal material, PUNISH ME for "threatening" and being "assaultive" (up in Maine!) all because these defendants didn't have the courage or the wits to try me themselves.

I lost money. I lost friends' money. I lost nearly two years of my life at age 66 to 68 and most assuredly, I will tell this court and anybody else, I suffered for that amount of time... That Florida C.M. Unit at Suwannee was, without doubt, the hardest time I've ever pulled. So I'm going to be straight-up honest here. I'm looking for some redress here. So ends this declaration.

Dated this 30th day of May, 2017

John J. Condon, pro se #148840
ZCI 2739 Gall Blvd.
Zephyr Hills, Fla 33541

— Certificate of Service —

I certify that I placed this second declaration of John Jay Condon in the hands of an institutional official for mailing to: Diane Sleek, AAG, Office of the Attorney General, State House Station Six, Augusta, Maine, 04333 on this:

30th day of May, 2017

- 6 -