UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| JOHN JAY CONDON, | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | 1:16-cv-00372-JAW |
| | ) | |
| RODNEY BOUFFARD, et al., | ) | |
| | ) | |
| Defendants | ) | |

**ORDER ON DISCOVERY ISSUES**

In this action, Plaintiff John Jay Condon alleges Defendants Rodney Bouffard, Troy Ross, and Jody Breton violated his constitutional rights under the Fourteenth Amendment Due Process Clause, the Fourteenth Amendment Equal Protection Clause, the Eighth Amendment Cruel and Unusual Punishments Clause, and the First Amendment Petition Clause. Plaintiff contends Defendants subjected him to prolonged confinement in segregation at the Maine State Prison and, after he petitioned for review of administrative action in state court, Defendants transferred him to the Zephyrhills Correctional Institution in Florida.

On January 10, 2018, the Court held a telephonic conference with the parties to address several issues regarding Defendants' responses to Plaintiff's discovery requests. Most, if not all, of the discovery requests appear to be designed to obtain information regarding Plaintiff's claim that he was subjected to an atypical and significant hardship, based on an extended period of administrative segregation, and on his claim that Defendants deprived him of due process and violated the Equal Protection Clause based on the management of his confinement. In particular, with respect to his equal protection claim, Plaintiff alleges that he

was treated differently because he filed an appeal in state court challenging his prolonged confinement in segregation.

## Discussion

### A. Standard for Discovery

Pursuant to Federal Rule of Civil Procedure 26(b)(1), "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Additionally, "[i]nformation within the scope of discovery need not be admissible in evidence to be discoverable." *Id.* The proof necessary for Plaintiff to prevail on his claims informs the scope of permissible discovery.

To establish a due process claim for deprivation of a liberty interest, an inmate must demonstrate not only the existence of atypical and significant hardship, *Sandin v. Conner*, 515 U.S. 472 (1995), but also inadequacies in the administrative procedure used to impose and review the long-term imposition of such a hardship. *Swarthout v. Cooke*, 562 U.S. 216, 219 (2011); *Hewitt v. Helms*, 459 U.S. 460, 472, 476 (1983). Here, according to the complaint, Defendants conducted a series of periodic administrative segregation reviews (ASRs). They also conducted an investigation into the circumstances (i.e., an alleged threat to a staff member) that led to Plaintiff's confinement in administrative segregation. The investigation is relevant to the procedural due process inquiry. *See Hewitt*, 459 U.S. at 476 (discussing the procedures to prescribe in the "informal context of prison officials who propose to confine an inmate to administrative segregation pending completion of an investigation against him" and noting that "[s]o long as" the procedures are observed "and the decisionmaker reviews the charges and then-available evidence," due process will be satisfied); *see also id.* at 477 & n.9

(noting that the procedural standard is in part low because administrative segregation is temporary, "pending the outcome of the investigation," and that the minimal procedures would not necessarily suffice "for indefinite confinement of an inmate," but would suffice during "the progress of the investigation"). Furthermore, assuming the duration of confinement in segregation was sufficient to implicate a liberty interest, the decision to maintain Plaintiff in confinement must be supported by "some evidence." *Superintendent v. Hill*, 472 U.S. 445, 454 (1985). An investigative report would tend to be responsive to that question.

To establish a claim of retaliation, an inmate bears the burden of demonstrating (1) that the inmate engaged in conduct that is protected by the First Amendment; (2) that a defendant took adverse action against the inmate because of the inmate's protected conduct; and (3) that the adverse action would deter an inmate of ordinary firmness from exercising his or her First Amendment rights. *Hannon v. Beard*, 645 F.3d 45, 48 (1st Cir. 2011); *Davis v. Goord*, 320 F.3d 346, 352 (2d Cir. 2003); *Thaddeus–X v. Blatter*, 175 F.3d 378, 398 (6th Cir. 1999).

**B.    Plaintiff's First Requests for Production from Troy Ross**

*1.    Request for Production #1*

Plaintiff requests the internal perimeter security (IPS) team's investigative reports regarding the threatening charge and the change in Plaintiff's confinement. Defendant Ross did not produce any reports. Defendant maintains the reports are confidential pursuant to the Maine Intelligence and Investigative Record Information Act ("Information Act"), 16 M.R.S. §§ 802 et seq.

Pursuant to the Information Act, "a record that is or contains intelligence and investigative record information is confidential and may not be disseminated by a Maine criminal justice agency to any person … if there is a reasonable possibility that public release or inspection of the record would" result in the disclosure of certain confidential or investigatory information, or implicate certain public safety concerns.  *Id.* § 804.  For example, the Information Act prohibits disclosure where release of the record would disclose a "confidential source" or "investigative techniques and procedures or security plans and procedures not known by the general public."  *Id.* § 804(4), (7).  Disclosure, however, is permitted in certain situations, including pursuant to a court order that provides "express authorization" for the disclosure.  *Id.* § 805(5).

An investigative report regarding the circumstances that resulted in the confinement conditions about which Plaintiff complains is relevant to Plaintiff's claim and is therefore discoverable unless protected by a privilege.  Here, Defendant Ross effectively maintains that the entire report is confidential pursuant to the Information Act.  Even if any such reports are within the protection of the Information Act, because the reports would be relevant to the claims asserted in this action, Plaintiff is entitled to the reports, subject to Defendant's ability to redact any specific information that might generate the particular concerns identified in 16 M.R.S. § 804.[1]  The Court, therefore, orders Defendant to produce to Plaintiff the reports generated as the result of the investigation into circumstances that led to the change in the conditions of Plaintiff's confinement, subject to Defendant's ability to redact from the reports

---

[1] Plaintiff has acknowledged that limited redaction, including to protect the identity of a confidential informant, would be appropriate.  (Letter from Plaintiff to James Fortin, AAG at 2, ECF No. 55-2.)

any specific information that might generate the particular concerns identified in 16 M.R.S. § 804. If Defendant redacts any information, Defendant shall produce a log in which he describes the basis for each redaction.

### 2.  *Request for Production #2*

Plaintiff requests information concerning Maine State Prison inmates "placed on administrative segregation (Ad. Seg.) pending the outcome of an 'investigation' into alleged 'threats'" and, whether the inmates were returned to general population or transferred to another state, and the duration of segregation. Plaintiff seeks information for a 10-year period.[2] During the telephonic conference, Plaintiff limited his request to maximum security inmates.

Defendant objects to the request based on the Information Act. He also objects because, he contends, the request is overbroad and unduly burdensome.

Plaintiff's request is unduly burdensome and overly broad in both time and scope. Although the treatment of other similarly situated inmates is potentially relevant to Plaintiff's equal protection claim, Plaintiff's request is not proportional to the needs of the case.

While the Court will not require Defendant to produce the documents requested, the Court orders Defendant to inform Plaintiff whether, between October 28, 2010, and October 28, 2014 (the date on which Plaintiff was transferred to the Zephyrhills Correctional Institution), any maximum security inmates were held in administrative segregation in the

---

[2] Plaintiff originally requested information for a 17-year period and the names of the inmates, but he later revised his request so that Defendants could number the inmates rather than reveal their names, and restricted the period to ten years. (Letter from Plaintiff to James Fortin, AAG at 3.)

Special Management Unit of the "supermax" building[3] for more than 30 consecutive days pending the results of an investigation into a charge of threatening staff (i.e., in the absence of a formal disciplinary charge or pending the determination of a formal disciplinary charge), and, if so, the number of inmates and the duration of each inmate's total consecutive period of segregated confinement, including, where applicable, consecutive periods of disciplinary segregation.

### 3. *Request for Production #3*

Plaintiff requests information (names, dates, etc.) regarding all guilty findings in disciplinary proceedings, from 2000 to the present, in which an inmate was charged with threatening a staff member. Defendant contends the requested information is protected from disclosure by the Information Act. He also asserts the request is overly broad and unduly burdensome.

The request is in fact overly broad and unduly burdensome. Although the Court will not require Defendant to produce all of the documents requested, the Court orders Defendant to provide Plaintiff, for the period between October 28, 2010, and October 28, 2014, with the number of maximum security inmates who were found guilty on a disciplinary charge of threatening staff, and the total amount of time each inmate spent in segregated confinement as a consequence of the charge.

---

[3] Plaintiff alleges he was removed from the general population of the Maine State Prison and placed in the segregated Special Management Unit (SMU) of the Prison's "supermax" building on March 5, 2014. (Compl. ¶ 9, ECF No. 1-2.) Plaintiff alleges that his stay in the SMU ended on October 28, 2014, at which time he was transferred to the custody of the Florida Department of Corrections. (*Id.* ¶ 46.)

### *4.      Request for Production #4*

Plaintiff requests information (names, dates, etc.), for a 20-year period, regarding any Maine State Prison inmate who was transferred to an out-of-state prison based on a charge that the inmate posed a threat to staff. Defendant contends the requested information is protected from disclosure by the Information Act.  He also asserts the request is overly broad and unduly burdensome.

The request is overly broad and unduly burdensome.  Although the Court will not require Defendant to produce all of the documents requested, the Court orders Defendant to provide Plaintiff, for the period between October 28, 2010, and October 28, 2014, with the number of maximum security inmates who were transferred to an out-of-state prison based, in whole or in part, on the assessment that the inmate posed a threat to staff.

## C.     Plaintiff's Requests for Production of Documents from Rodney Bouffard and Jody Breton

As discussed during the telephonic conference, Defendants shall respond to the requests.

### NOTICE

Any objections to this Order shall be filed in accordance with Federal Rule of Civil Procedure 72.

/s/ John C. Nivison
U.S. Magistrate Judge

Dated this 31st day of January, 2018.