UNITED STATES DISTRICT COURT
— DISTRICT OF MAINE —

JOHN JAY CONDON,
  Plaintiff,

v.                                    Civil #
                                      1-16-CV-00372-JHN
RODNEY BOUFFARD, et al.,
  Defendants.

## MOTION FOR A SECOND CONFERENCE OF COUNSEL

Now comes the plaintiff pro se in the above titled case who, although reluctantly, seeks a second conference of counsel to resolve a further discovery dispute encountered by the litigants.

### — The Dispute —

(1) Plaintiff seeks the names of the first 15 inductees into the "Administrative Control Unit" (ACU) from Defendant Bouffard. The defendant, in conjunction with his counsel, refuses to produce the names because: "The Department of Corrections is prohibited by state law from releasing information regarding other prisoners. 34 M.R.S.A. § 2016." (See Attachment 'A'). Defendant's counsel says he cannot release the names

—1—

UNLESS ORDERED TO DO SO BY A COURT.

(2) PURSUANT TO LOCAL RULE 26(b) of THIS HONORABLE COURT, THE PLAINTIFF, UPON LEARNING THAT THE COURT WAS NOT PERSUADED THAT A WAIVER of RULE 26(b) WAS ACCEPTABLE, HAS WRITTEN DEFENSE COUNSEL IN AN EFFORT TO RESOLVE THIS SECOND DISPUTE OVER DISCOVERY. (SEE ATTACHMENT "B".)

(3) DEFENSE COUNSEL FURTHER STATES THAT THE "RELEVANCE" of THE REQUEST IS QUESTIONABLE. THUS, THIS MOVES THE ISSUE TO A DEBATE FORUM WHERE BOTH PARTIES SEEK THE COURT'S EXPERTISE TO SETTLE THE DISPUTE.

---

SEVERAL REASONS WHY THESE NAMES ARE RELEVANT TO PLAINTIFF.

(4) PLAINTIFF SPENT HIS FIRST 30 YEARS of HIS 1982 SENTENCE HOUSED WITHIN THE FEDERAL BUREAU of PRISONS PURSUANT TO U.S. TITLE 18 § 5003.

(5) WHEN PLAINTIFF RETURNED TO MAINE STATE PRISON (MSP) IN 2012, HE WAS UNFAMILIAR WITH THE MSP POPULATION.

(6) WHEN PLAINTIFF WAS PLACED ON ADMINISTRATIVE SEGREGATION (AD SEG.) ON MARCH 5, 2014, HE KNEW NONE of THE INMATES ALREADY CONFINED IN THE SPECIAL MANAGEMENT UNIT (SMU).

-2-

(7) As time inched along in AC where plaintiff was forcibly confined to a 6'x10' cell 23-24 hours per day, he became more insistent that whoever was responsible for locking him down like this and keeping him there... Do Something, one way or the other. In other words, file formal charges against him, try him, transfer him or let him back into population.

(8) Defense Counsel stated in his letter of February 13, 2018 (Attachment "A") that a "decision to transfer (plaintiff) out of MSP was made long before the ACU was opened." This statement flies in the face of the facts surrounding this issue. The Ad. Seg. Reviews ("ASR") Condon underwent, namely the 5th, 6th, 7th, 9th, 10th and 11th ASR's (dated 4/14, 4/17, 4/23, 6/24, 7/30 and 8/29, 2014) all have some kind of indication Condon is headed for the ACU. That, as early as April, 2014, and continuing up to late August, 2014. (Condon sent to SMU on March 5, 2014). Please see plaintiff's August 7, 2017, Motion to Supplement the Record for a copy of those ASR's. See also the aborted attempt to place plaintiff in the ACU on June 6, 2014 and also The Declaration of David Silva located within the plaintiff's January 26, 2018, Motion for a (Second) Conference of Counsel.

(9) Plaintiff lives with these first ACU inductees and he is in need of

one or two of these men as witnesses to collaborate on just what was going on (administratively) concerning the care, custody and treatment of Condon.

(11) From Day one to Day 234 of Condon's forced confinement, he tirelessly wrote Defendant Warden Bouffard① requesting a one-on-one meeting to get these blown out of proportion comments plaintiff made during a "cell rap session" put into a <u>sane</u> perspective.

(12) All efforts to contact Warden Bouffard came to naught. Defendant Bouffard went so far as to evade his duties pursuant to M.D.O.C. policy No. 15.1 (Administrative Segregation), Section VI, Procedure E-7 which states:

"The Chief Administrative Officer, or designee, shall visit the living area where Ad. Seg. prisoners are held at least weekly."

He never made it around to the wing/tier I was on and neither did Defendant Ross. This was not an overlook or a roll of the dice... This was evasiveness on purpose. No question.

---

① "All letters to Warden Bouffard did not go to him, but to a "Bob Costigan," <u>who answered letters directed to Warden</u>

- 4 -

(13) All efforts to persuade defendant Bouffard to meet with Condon failed. He wouldn't do it. He adamantly avoided any meeting with his prisoner. Whether he was told to do so by this 30+ year old D.O.C. employee, Costigan, is debatable. The fact remains: He purposely avoided any meeting with Condon and he was derelict in his duties as C.A.O. in doing so.

(14) Plaintiff not only wrote the Warden but he sent over 20 oral messages (requesting a meeting) via various officers, Lieutenants, Captains, Associate Wardens and even a civilian who facilitated a group of civic minded citizens called "Just Alternatives". They were allowed to "visit" the SMU and talk to the prisoners there.

(15) Plaintiff, who at that point in time had over 32 years in on his Maine sentence, was not afforded the respect of a visit by the ultimate decision maker on his status. 32 years... Plaintiff was highly offended by this inaction and labeled it cowardly: To lock up a man from a distance and refuse any kind of conversation with him.

(16) Plaintiff wants one or two of these initial ACU inductees to co-sign on that inaction. He also wants testimony that 5 or 6 pre-inductees who lived on plaintiff's tier were

-5-

summoned (outside of the SMCC) specifically to a meeting with Defendants Bouffard and Ross along with several other MSP administrative brass.

(17) There are other relevant reasons why Plaintiff needs these men, such as the aborted attempt to place nine or ten of us into the ACU.[2] At trial, other accusations may be leveled at the plaintiff and he may need testimony from these sought after men to rebuke any false accusations. These men, more than likely, will know the names of the other inmates who were present during the infamous "cell rap session" to testify as to what was said by the plaintiff (to other prisoners) that caused such an uproar and caused the plaintiff to be severely confined to various 6' x 10' cells for 673 days in two states. No charges, no convictions, no face to face meeting with any of the ultimate decision makers... No Nothing but the loss of almost two years of the limited liberty Conson was heretofore afforded. Surely, the vanguard of the American Constitution is that: "Life, Liberty and property cannot be taken away without due process of law." The only "Due Process"

---

[2] The administration aborted the attempt after plaintiff told the other men and wrote the administration that a hearing was required in order to place us there.

-6-

PLAINTIFF EXPERIENCED WAS IN FLORIDA BUT THEY BASED THEIR DECISION ON THE FALSE AND SEVERELY MIS-LEADING INFORMATION MAINE RELAYED TO THEM.

(18) THOUGH IT MAKES LITTLE DIFFERENCE, PLAINTIFF WILL REDUCE THE LIST HE SEEKS TO TEN NAMES INSTEAD OF THE 15.

WHEREFORE, PLAINTIFF RELUCTANTLY REQUESTS A SECOND TELEPHONIC CONFERENCE OF COUNSEL WITH THIS HONORABLE COURT.

DATED THIS 21st DAY OF FEBRUARY, 2018

*signature* PRO SE
JOHN J. CONDON
#148840, ZCI, 2739 GALL BLVD. ZEPHYRHILLS, FLA 33541

## Certificate of Service

THE UNDERSIGNED HEREBY CERTIFIES THAT HE SERVED THE ABOVE DOCUMENT BY FIRST CLASS MAIL TO:

JAMES E. FORTIN, A.A.G.
OFFICE OF THE ATTY GEN
SIX STATE HOUSE STAT.
AUGUSTA, MAINE 04333
FEB. 22nd, 2018

*signature*
JOHN J. CONDON

-7-