UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| JOHN JAY CONDON, | ) |
| | ) |
| Plaintiff | ) |
| | ) |
| v. | ) Civil No. 1:16-cv-00372-JAW |
| | ) |
| RODNEY BOUFFARD, et al., | ) |
| | ) |
| Defendants | ) |

**AFFIDAVIT OF RODNEY BOUFFARD**

RODNEY BOUFFARD, being under oath, does hereby depose and say:

1. I was formerly employed by the Maine Department of Corrections as the Warden of the Maine State Prison (MSP). I was formally appointed to this position by Commissioner Joseph Ponte in May of 2013, but I served in an acting capacity for several months before that. I held the position of Warden throughout 2014. The facts stated in this affidavit are based on my personal knowledge and on records of the Department of Corrections available to me.

2. I was familiar with prisoner John Condon during the time he was at MSP from the time I started there until the time he was transferred out of state. During that time, I received number of letters from Condon.

3. I was aware that Condon was serving a life sentence for committing three murders in Maine in 1982 and that he had spent most of the past three decades incarcerated in the federal prison system. I was also aware that he had been transferred back to MSP in 2012 at his request, pursuant to a policy instituted by Commissioner Ponte for the return of out-of-state prisoners. I was aware that Condon had admitted in a letter to Classification Director Scott McCaffery that

he had killed a fellow prisoner in the federal prison in Lewisburg, Pennsylvania in 1993. He made the same admission in a letter to me.

4. When Condon was transferred back to MSP, he was advised that we would be monitoring his behavior closely and that, if his return to MSP did not work out, we would seek other placement for him.

5. Condon wrote to me frequently expressing his dislike of being at MSP. At one point, I had a conversation with him in the chow hall in which he indicated that, if I didn't transfer him somewhere down south, he would "do something" to get himself transferred.

6. In early March, 2014, I was told that Unit Manager Antonio Mendez had received information from a confidential informant, whom he had found to be reliable in the past, that John Condon planned to kill another Unit Manager, Holly Harris. I considered this an immediate threat to Ms. Harris's safety, and I approved the placement of Condon on Emergency Observation Status in the Special Management Unit (SMU).

7. Because of Condon's background and history, I considered his presence in the prison a continuing threat to Ms. Harris and to other staff. In consultation with management staff at the prison, I approved Condon's placement on Administrative Segregation status in SMU. Deputy Warden Ross, who was in charge of security at MSP, acted as my designee in reviewing the recommendations of the SMU management team regarding continued confinement of Condon in SMU.

8. During this period, I was concerned that Condon could not safely be returned to the prison's general population, but I also did not want to keep him in SMU for an extended period of time. Condon repeatedly wrote to me expressing his dissatisfaction with MSP and requesting a transfer out of state, preferably back into the federal prison system.

9. On May 16, 2014, I wrote to Director of Classification McCaffery and requested that he arrange to transfer Condon out of state. A copy of my letter to Mr. McCaffery is attached to this affidavit as Exhibit A.

10. Around that time, The Department was in the process of creating an Administrative Control Unit, which would act as a step-down unit for prisoners held in Administrative Segregation to allow them to transition back into general population. Condon was considered for transfer to the ACU in the spring of 2014; however, due in part to the departure of Commissioner Ponte and the appointment of a new commissioner, plans for the ACU were put on hold, and it did not open until November of that year.

11. I have been advised that Condon filed a petition for judicial review in state court regarding his confinement in the SMU in July of 2014. I was not aware of that filing at the time it occurred, and I was certainly not aware of it when I requested Mr. McCaffery to arrange for Condon's transfer out of state, as that decision was made two months earlier. Condon's petition for judicial review was not a factor in my decision to request that he be transferred.

Signed under the penalty of perjury this 28th day of February, 2018.

    /s/ Rodney Bouffard_____
Rodney Bouffard

Subscribed and sworn before me, this 28th day February, 2018.

  /s/ Lyndy P. Morgan_____
Notary Public
My commission expires: May 29, 2019