# United States District Court
## District of Maine

John Jay Conson, ) 
  Plaintiff, ) Civil No.
 v. ) 1:16-cv-00372-JAW
Rodney Bouffard, et al., )
  Defendants )

## Declaration in Opposition to Defendants' Motion for Summary Judgment

Pursuant to 28 USC 1746, I, John Jay Conson declares under the penalty of perjury, the following is true & correct:

1. I am the plaintiff in the above entitled case and I make this declaration in opposition to Defendants' Motion for Summary Judgment pursuant to Local Rule 56(c).

2. I am stating that there are many issues of material fact that are in dispute here and, in addition, there are issues of material fact to be presented here which will prevent the Defendants' Motion from succeeding.

3. The Defendants here; Rodney Bouffard, Troy Ross & Joby Breton, subjected myself to an atypical and significant hardship in relation to the ordinary instances of prison life

-1-

based on their total mis-management of my confinement. They did this not only for the 235 days they subjected me to at Maine State Prison, but because I petitioned for administrative review in State Court, the Defendants not only sent me to one of the worst prison systems in the United States, but with vindictiveness, they **LIED** to the Florida Department of Corrections (FDOC) officials in order to deceive them into inflicting further "punishment" upon myself, which they **DID**, to the tune of another 438 days of segregated confinement in a unit designed for those Florida inmates who had been convicted of major disciplinary infractions.

4. Instead of relating to the FDOC officials that, for all intense purposes, I was still under "investigation" for allegedly threatening a Maine State Prison (MSP) staff member during an in-cell "rap" session (which I **always** pleaded/stated, I was **NOT Guilty of**...), they told Florida that **I HAD THREATENED** staff and that **I HAD BEEN ASSAULTIVE** to both staff & inmates alike.

5. Further, the Defendants purposely withheld sending my property (which included my Administrative Segregation Review (ASR) records) and money to Florida with the result being that I had no way to defend myself against the lies related to the Florida authorities when

-2-

I WAS BEING CLASSIFIED TO DETERMINE WHERE I WAS TO BE HOUSED IN THEIR SYSTEM.

6. DUE TO THE ASR PROCESS I RECEIVED AT THE HANDS OF THE DEFENDANTS IN MAINE, WHICH TURNED OUT TO BE NOTHING MORE THAN A HOLLOW FORMALITY, COUPLED WITH THE LIES TOLD TO THE FDOC, I, JOHN JAY CONSTAN, NEVER CONVICTED OF ANY DISCIPLINARY OFFENSE, ENDED UP SPENDING A TOTAL OF 673 DAYS OF RESTRICTED SEGREGATED CONFINEMENT. 438 OF THOSE DAYS WERE SPENT IN A FLORIDA CLOSE MANAGEMENT (CM) UNIT UNDER CONDITIONS WHICH MATCHED, IF NOT SURPASSED, THOSE OF THE OHIO STATE PENITENTIARY MENTIONED IN A SUPREME COURT CASE WHICH SATISFIED ANOTHER SUPREME COURT RULING/STANDARD OF A PRISONER SUFFERING AN ATYPICAL AND SIGNIFICANT HARDSHIP IN RELATION TO THE ORDINARY INSTANCES OF PRISON LIFE.

7. THESE THREE DEFENDANTS: (a) ACTED IN EXCESS OF THEIR OWN POLICY STATEMENTS (b) MADE CONCLUSIONS (AND CONTINUE TO DO SO RIGHT UP TO THE PRESENT) BASED UPON UNLAWFUL PROCEDURE (c) WERE AFFECTED BY BIAS AGAINST MYSELF (d) MADE DECISIONS UNSUPPORTED BY SUBSTANTIAL EVIDENCE and (e) ACTED ARBITRARILY, CAPRICIOUSLY AND WITH AN ABUSE OF DISCRETION.

8. ALL THESE ACTIONS AND ATTITUDES OF THESE THREE DEFENDANTS (ABOVE) RESULTED IN THEIR: →

A. Violating my Constitutional Rights under the Fourteenth Amendment Due Process Clause by moving me out of general population at MSP and into the Special Management Unit (SMU) under "Administrative Segregation" (Ad. Seg.) status for approximately eight months and making me suffer through a meaningless ASR process that was completely devoid of a real Ultimate Decision Maker (UDM) (face to face) and proved to be nothing more than a fraudulant hollow formality absent of meaningful due process;

B. Violating my Constitutional Rights under the Fourteenth Amendment Equal Protection Clause because I filed an appeal in state court challenging my prolonged confinement in their SMU Unit;

C. Violating my Constitutional Rights to due process under the Fourteenth Amendment by transferring me without a hearing to the FDOC and deliberately misrepresenting the facts to them with the intent of deceiving them into inflicting further punishment upon the 67 year old untried, unadjudicated and unindicted plaintiff here... myself.

D. Violating my Constitutional Rights under the First Amendment Petition Clause by transferring me to one of, if not the worst, prison systems in the United States in retaliation for

-4-

filing for review by a state court justice RE: the prolonged confinement of myself in the SMU of MSP under Ad. Seg. status.

## Procedural & Factual Background.

9. The Defendants wrote six typewritten pages entitled: Factual and Procedural Background (FPB) that contains sweeping unjustified statements that I am simply not going to passively accept without contesting same.

10. I did commit three murders in 1981, However, that was **37 years ago**.

11. Regarding my "disruptive behavior" (Defendants (Def't) FPB p.₂,¶1); That occurred **prior** to trial, and not after, as the Defendants would have the reader believe.

12. I killed a federal inmate (who threatened me) in 1993, **25 years ago**. I thereafter used that murder as a "wedge" to maintain single cell status in the various federal penitentiaries I was housed in for the next 20 years.

13. I continued to use that same "wedge" prior to and after my transfer back to Maine, mentioning it somewhat off-hand or as a kind of a "footnote" in several letters to Maine officials, again, to maintain a single-cell status. Single cell status in open populations in

-5-

AMERICA'S PRISONS TODAY IS A LUXURY RARELY SEEN.

14. ON p.3, ¶2, Def's FPB, DEFENDANTS STATE "... PRISONERS IN (SMU) SEGREGATION ARE PROVIDED LIVING CONDITIONS APPROXIMATELY EQUAL TO THOSE IN GENERAL POPULATION." THAT STATEMENT IS SO PROFOUNDLY AND PURPOSELY MIS-LEADING AS TO LABEL IT A LIE. THE ONLY ASPECT "APPROXIMATELY EQUAL" IS THE NUMBER OF SQUARE FEET IN EACH CELL (POP vs. SEG.) AND THE BUCK STOPS THERE. IN 2014, COUNTING THE WEEK-ENDS, A PRISONER IN MAINE'S SMU SPENDS WELL OVER 23 HOURS PER DAY IN HIS SEGREGATED CELL, PERIOD.

15. THE ONLY OUTSIDE-CELL RECREATION (WEATHER PERMITTING) WAS A TOP-TO-BOTTOM FENCED-IN "DOG RUN" OF APPROXIMATELY 15 YARDS LONG AND 5 FEET WIDE. AND THAT'S IT FOR OUTSIDE RECREATION. IN GENERAL POPULATION, THAT CELL DOOR IS OPEN APPROXIMATELY 12-14 HOURS PER DAY... WHERE A PRISONER CAN WALK OUTSIDE TO HEAT UP HIS COFFEE, SANDWICH, HONEY-BUN OR A MYRIAD OF EATABLE CANTEEN ITEMS IN A MICROWAVE. HE CAN ALSO SOCIALIZE AND PLAY GAMES WITH OTHER PRISONERS AT CARD TABLES WITHOUT HAVING TO SCREAM THROUGH TWO STEEL DOORS IN THE SMU. PERHAPS THAT SAME PRISONER WOULD LIKE TO TAKE A SHOWER OR MAKE A PHONE CALL OR ORDER CANTEEN ITEMS FROM A KIOSK LOCATED ON THE "FLATS" (GROUND FLOOR) OF THE UNIT... NO PROBLEM, HE'S "FREE" TO DO SO. MAYBE HE'D LIKE TO GO OUTSIDE HIS

-6-

living unit to two large recreational fields (yards) which together total five to six acres. There, he can toss a football, get in a "pick-up" softball game, play horse-shoes or walk the one-sixth mile track in the sunshine.

16. There is also an indoor gym where he can shoot baskets, pool or play ping-pong. Also located in the gym are various modern "Universal" machines where he can get a good full-body work-out, or he can walk down the corridor to a fully equipped weight room with floor to ceiling mirrors.

17. Perhaps this prisoner in population would like to browse a well-stocked leisure library, get on a word-processor or do some legal research at a law library complete with law books and a Westlaw computer. Perhaps he'd like to get a hair-cut at the Barber Shop or attend club functions or religious activities in a large chapel open all day. Maybe, like I was doing, he'd signed up for college classes taught by University of Southern Maine professors.

18. The prisoner in general population can also choose to visit or work in a MSP Green House, attend special musical functions featuring guests from the free-world... And instead of eating a solitary meal off of a plastic tray slid through a slot in his steel small door, he could dine with other prisoners in one of three chow halls.

-7-

19. I, who sat in a segregated SMU cell under what's to be proven to be a bogus "investigation," could not purchase any canteen food items, NOT EVEN COFFEE (a convict's staple), for 235 days. I was only allowed to purchase soap, shampoo, toothpaste & paper. I, never charged with anything formally and always stating I had no intentions of hurting my body... faced the same kind of restrictions placed on those prisoners found guilty of a disciplinary infraction.

20. Inside my "Living Conditions" cell, I had to write with a child's "safety pen" and I had no chair or desk in which to comfortably write or eat meals off... (chairs and desks are issued in general population cells). Further, for 235 days, I had to brush my teeth with a two-inch child's safety toothbrush.

21. There is an enormous difference in the "Living Conditions" between prisoners in open population at MSP and those who sit in a cell 23 out of 24 hours per day under the restrictions of the SMU of MSP.

22. The plaintiff suffered through an ASR process that was nothing more than a rigged system (and most likely still is today) in which the defendants tried to clothe themselves in compliance with meaningful due process. Under close inspection, there was no meaningful due process in these ASR's for the UDM in my case was

-8-

Defendant Warden Bouffard's "Designee," Defendant Ross, who never attended one of my 14 ASR's (March 10, 20, 27, April 1, 14, 17, 23, May 2, 23, June 11, 24, July 30, August 29 and September 29, 2014), yet could (and did at one point) REVERSE the decision of the ASR Board with the stroke of his unseen (to myself) and distant pen. Defendant "Designee" Ross, who was <u>neither approachable by myself nor appealable</u>, is the <u>HIDDEN</u> ultimate decision maker on <u>EVERYONE</u> of my Administrative Segregation Reviews.

23. Two of my ASR's (May 23 & June 24, 2014), the ASR Chairman decided I was "not needed" to attend my own ASR which was in direct conflict with my explicit wishes and the MDOC policy on Administrative Segregation (Section VI, procedure C(2)).

24. Another clever or slick use of words in the Defendant's DFB (p.5, ¶3) used to cause distortion in the minds of the reader is <u>to suddenly convict John Jay Conyson</u> on paper <u>without any proof</u> of doing so. The Defendants on p.5 state that the reasons for retaining me in segregation were that I "was a danger to other inmates and staff" and that "(I) threatened to kill the Unit Manager." Where is the proof of this outlandish language?? Did the Defendants convict me at a disciplinary hearing <u>AFTER</u> they sent me to Florida?? What were the results of the in/famous IPS Investigation?

-9-

Who do these Defendants Think they are to convict me Guilty of threatening to kill someone before a Federal Justice who is trying to determine the facts here?? This "Do as we please" attitude of the Defendants is exactly why I am spending money and time to bring this matter before a Federal Court. These Defendants did me wrong, they disrespected me and played me for Stupid... Thinking I'd "get over it" and "forget about it." Win or lose, they WERE DEAD wrong on that judgment.

25. In regard to Defendants accusation that I wanted out of MSP and Maine... That is Correct. I most certainly wanted out of Maine and MSP after experiencing first hand the Defendants:

(A) Deceptive ASR process with their Hidden ultimate decision maker(s);.. their

(B) "On Again & Off Again" Bizarre attempt to place me in what I, at first, perceived to be some "Deep State" SMU program without a Hearing;

(C) A "Commissioner's Six monthly Review of my Ad. Seg. Status performed erroneously by Deputy Commissioner Defendant Jody Breton who was NOT authorized to perform the Commissioner's Review (NO "Designee" Here). Not only not authorized, her review (if it can be called that) consisted of Co-signing the Defendant Warden Bouffard's opinion that I stay locked up. Her attitude of: "Well, if the Warden Thinks you should

-10-

stay locked-up, then SO DO I" would cost Her Her Job if I was in position to do so, and on the spot. I look forward to approaching this woman on the witness stand; and

(D) THE DEFENDANTS ARROGANT "WE DO AS WE PLEASE" ATTITUDE in Juggling A MAN'S LIBERTY... NOT ONLY A MAN'S LIBERTY, BUT A UNITED STATES CITIZEN'S LIBERTY, PRISONER or NO PRISONER. THIS "WE DO NOT HAVE TO SEE OR TALK TO YOU" PRE-AMERICAN REVOLUTION ATTITUDE spurred myself into announcing to any and all involved! "GET ME OUT OF HERE." ONCE OUT... I'D BE BACK... AND HERE I AM.

26. IT WAS chilling to Think BACK Then AT AGE 67 That I would live out the remainder of my life in Some obscure Small cell. PART of These HIDDEN ULTIMATE DECISION MAKER'S STRATEGY was to NEVER TELL ME or my people on the street that I was up for A Transfer. THAT WOULD of EASED MY MIND CONSIDERABLY. Right up to Day 235, They NEVER TOLD ME! Not until 2:00 A.M. on October 28, 2014, Did I know I would be Transferred... to what I thought would be a general population, to wherever I was going. It wouldn't of hurt them to tell me that I was up for A Transfer... Their Collective refusal to do so can only be explained by This Plaintiff As VINDICTIVENESS... AS Punishment for having to seriously Challenge their prolonged Confinement of myself in -11- A STATE COURT ACTION.

## JOHN JAY CONDON FURTHER DECLARES:

27. I want to declare the following in PLAIN ENGLISH before I submit a legal argument in support of my opposition to this Motion for Summary Judgment:

28. I have no argument with the conditions of my SMU confinement in Maine but I reserve the right to label their ASR process a "FRAUD" and a "SHAM" for the deductive facts outlined in my opposing Statement of Additional Material Facts, pp. 1-3, # 1-11.

29. I also reserve the right to label the "IPS investigation" on me as a bogus investigation that was used as a pretext to hold me on Ad. Seg. "indefinitely."

30. I suffered conditions in the Close Management (CM) unit in Florida that matched toe-to-toe with the conditions at the Ohio State Penitentiary mentioned in Wilkinson v. Austin Supreme Court case. (SEE Plaintiff's May 15, 2017, Declaration of John Jay Condon AND Plaintiff's March 10, 2017, Declaration of Supplemental Factual Information.)

31. When I left Maine on October 28, 2014, I was still "under investigation" for allegedly threatening (indirectly) a MSP staff member of which I always stated I was not guilty of.

32. When I arrived in Florida

and "CLASSIFIED" without any of my property (still in MAINE); FLORIDA, reading off of the DOSSIER on me PREPARED BY "MAINE..." TOLD ME I was found GUILTY in MAINE of not only "THREATENING A STAFF member" but ALSO of "ASSAULTIVE" BEHAVIOR.

33. Somewhere BETWEEN MAINE AND FLORIDA on The TRIP DOWN, I LOST ALL my Due process Rights AND FLORIDA, looking AT The DECEPTIVE LIES LAID on Their DESKS, HAD NO choice But To lock me up over my FUTILE PROTESTATIONS.

34. Thus, AT The HANDS, The wiles, The MANAGEMENT, HEADED By These Three Defendants, I suffered An ATYPICAL AND SIGNIFICANT HARDSHIP for 673 Days in Relation TO The ordinary INSTANCES of "PRISON LIFE."... Convicted of NOTHING.

35. All This from A couple of "KITES" By Two ANONYMOUS MAINE STATE PRISONERS AND THE TREMBLING, INCOMPETENT REACTION of These Three DEFENDANTS.

36. If MAINE, If These Three DEFENDANTS HAD HELD A DISCIPLINARY PROCEEDING, A HEARING, AND CONVICTED me of These Two Bogus charges where I could of DEFENDED myself... FINE; BUT They DIDN'T... INSTEAD They chose A cunning Ruse... A SUBTERFUGE to punish me for Challenging Them and Their whole ASR process in A STATE A.P.A. ACTION... AND I PRESSED THAT COUNT ALL THE WAY TO A WRIT OF MANDAMUS TO The MAINE Supreme Ct.

-13-

37. This was vindictiveness and retaliation with a capital 'V' and 'R'... And I chose not to "forget about it" once freed from various 6'x10' cells for nearly two years and finally into an open population where I could secure and utilize <u>a decent pen</u>, <u>a solid desk</u> and <u>a chair</u> in which to sit in.

# · ARGUMENT ·

Plaintiff's placement on administrative segregation status in the Special Management Unit for eight months violated his right to due process under the Fourteenth Amendment.

As specifically outlined in Plaintiff's <u>Opposing Statement of Additional Material Facts</u> (enclosed), the Ad. Seg. Reviews (ASR) that Plaintiff was subject to in the SMU of MSP were nothing more than a fraud, a sham.. a hollow formality. Plaintiff never got an opportunity to present his views, his side of the story to the Ultimate Decision Maker (UDM), Defendant Troy Ross, who <u>also</u> "acted" as the Appellate Decision Maker <u>to his own rulings</u>. <u>Hewitt v. Helms</u> 459 US 460, 476 (1983); <u>Wilkinson v. Austin</u>, 545 U.S. 209, 226 (2005) <u>Swarthout v. Cooke</u>, 562 US 216, 219 (2011). Prisoners must be able to present their views directly to the person who actually makes the decision. <u>Hatch v. District of Columbia</u>, 184 F.3d 846, 852 (D.C. Cir. 1999).

thus never happened in Plaintiff's case. Further, Plaintiff was held in Ad.Seg. status for 235 days under the pretext of a bogus "investigation." In Hewitt, the Court cautioned that "Administrative Segregation may not be used as a pretext for indefinite confinement of an inmate." Hewitt @ 477, N.9.; Accord Wilkinson @ 224.

• •

Defendants violated Plaintiff's rights under the Fourteenth Amendment Equal Protection Clause * because he filed an appeal in state court challenging his prolonged confinement in Ad.Seg.

The Defendants, in retaliation for Plaintiff filing a state court action challenging his prolonged & continuing confinement in segregation, sent him to one of the worst prison systems in the United States: The Florida Dept. of Corrections (FDOC) where the jingo goes "Come to Florida on Vacation... Leave on Probation." The Plaintiff alleges he was treated radically different from any other inmate of MSP who found himself similarly situated to Plaintiff's predicament of March 5, 2014 to October 28, 2014 - and beyond. Plaintiff is now in the midst of a discovery dispute with the Defendants who refuse to reveal any statistics on Maximum Security Maine State Prison inmates over the last 10 years (now four)(from 2014) - who were also charged with "Threatening Staff." If Defendants are compelled to produce these documents, it will serve to satisfy the legal requirements necessary to prove

* 15 *

The Defendants here violated plaintiff's Fourteenth Amendment Right to Equal Treatment.

. . .

★ The Defendants violated plaintiff's Constitutional ★ Rights to Due Process by transferring him to the F.D.O.C. without a Hearing and then deliberately misrepresenting the facts surrounding plaintiff's status to Florida with the intent of deceiving them into inflicting further punishment upon plaintiff.

When plaintiff left Maine on October 28, 2014, he was still "under investigation" for allegedly "threatening," (NOT the "life" as Defendants have twisted this around over time) but "threatening a MSP staff member" (indirectly), which plaintiff at all times stated he is NOT guilty of. When plaintiff Condon arrived in Florida (D.O.C.) on November 1st, 2014, he was, according to the "dossier" prepared, or directed to be prepared by Defendants, in segregation in Maine for threatening staff and also (a new charge) for being assaultive to staff and inmates at MSP. Plaintiff had NO disciplinary hearing in Maine nor Florida. However, Florida, wary of sending a "threatening and assaultive" Condon into their general population, placed him on Close Management II (CM II) for 438 grueling days to observe his behavior... from behind bars.

Somewhere Between Maine and

-16-

Florida, Plaintiff lost all his due process rights as a result of the Maine "Dossier" on him presented to the F.D.O.C.

Condon was certainly eligible for a hearing prior to his transfer to Florida where he could of defended himself against these charges (now "Convictions"). However, he got none and as a result of the Defendants management of him, he received a total of 673 days of segregated confinement in two states; one he had never been to before (Florida) and had no friends or family located there.

• • • •

★ The Defendants violated Plaintiff's rights under the First Amendment Petition Clause by transferring him to the FDOC in retaliation for filing for review in state court challenging his prolonged confinement in segregation ★

(A) Plaintiff Condon engaged in a protected activity — filing for review in state court — filed on July 21, 2014, and process served (proof of service) on Defendants Ross and Bouffard on August 4, 2014 (see Knox County docket sheet) (enclosed) (8/4/14) (p. 2).

(B) Defendants took adverse action against Condon by not only sending him to the

. 17 .

worst prison system in the U.S., but they also **RETALIATED** by lying to the FDOC re: Cowan's "status" in Maine with the intent of deceiving the FDOC into inflicting further (unjustified) punishment upon the 67-year-old untried, unadjudicated and un-indicted Plaintiff.

(C) The causal connection between "A & B" (above) is that on August 4, 2014, Plaintiff had served by certified mail (Return Receipt Requested) Defendants Ross and Bouffard (see Knox County Docket Sheet) (proof of service) and by October 28, 2014, LESS THAN THREE MONTHS LATER, Cowan was headed to Florida with a cache of lies attached to him... regarding him. <u>Ferranti v. Moran</u>, 618 F.2d 888, 892 (1st Cir. 1980); <u>McDonald v. Hall</u>, 610 F.2d 16, 18 (1st Cir. 1979).

As far as Defendants argument that Cowan desired a transfer out of Maine... he most certainly did after experiencing the lies, the deceptions, the bogus investigation, the hollow formality of the "ASR" he suffered through and many more despotic, capricious and vindictive acts by these representatives of the Maine Department of Corrections and Maine State Prison. They never told Cowan he was up for a transfer... and personally, Plaintiff believes that the May 16, 2014, letter to McCaffery Re: Cowan transfer did not exist on May 16, 2014. SEE ALSO:

× 18 ×

Plaintiff's Declaration in opposition to Defendant's Motion for Summary Judgment. (pp. 10-11, # 25-26).

And if appropriate here, The Pro Se Plaintiff Cross-Motions for Summary Judgment Against the Defendants.

— * * * —

Dated This 16th Day of April, 2018

John Jay Condon _____ Pro Se

2739 Gall Blvd.                    # 148840
Zephyrhills, Fla 33541

— Certificate of Service —

The undersigned hereby certifies that he served the above document and all enclosures by First Class Mail to:

James E Fortin, A.A.G.
Office of The Atty Gen.
Six State House Station
Augusta, Maine 04333

April 16, 2018
_____

John Jay Condon

* 19 *