*Jody Breton*
*Interrogatories*

UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

JOHN JAY CONDON,            )
                            )
            Plaintiff       )
                            )
     v.                     )   Civil No. 1:16-cv-00372-JAW
                            )
RODNEY BOUFFARD, et al.,    )
                            )
            Defendants      )

DEFENDANT JODY BRETON'S RESPONSES
TO PLAINTIFF'S FIRST SET OF INTERROGATORIES

1. When did Commissioner Fitzpatrick become Commissioner of the Maine Department of Corrections (MDOC)?

ANSWER: Commissioner Fitzpatrick was appointed on February 18, 2015, although he served as acting commissioner before that.

2. Pursuant to MDOC Policy No. 15.1 (Administrative Segregation Status) Section VI, Procedure (A)(20) and Section VI, Procedure (B)(1)(2), were you, if you were appointed designee for the Commissioner at that time, "notified" and then subsequently "approve" the placement of John Condon (MSP #2425) on administrative segregation (Ad Seg.) status sometime between the dates of March 5-10, 2014?

ANSWER: No. Deputy Warden Ross approved the placement as the warden's designee.

3. You performed the Commissioner's six monthly review ad seq. status "on inmate Condon. You make claim in a letter to Condon dated September 30, 2014, that MDOC Policy No. 15.1". Does say Commissioner or Designee "shall do the review. My copy of Policy No. 15.1 at the time (latest revision 6/28/13) states (Section VI, (C)(14) that only the Commissioner

1

shall do that review and approval. I am confident my copy was in effect at the time of "your" review on or about September 9, 2014. Then, why did you do the Commissioner's six monthly review on inmate Condon?

ANSWER: To the extent that the plaintiff is incorrectly stating what the policy states, defendant objects to this interrogatory. Without limiting or waiving this objection, defendant states: The Commissioner delegated this authority to me. He is authorized to do so by statute.

4. You also stated in same letter to Condon that both former Commissioner Ponte and Commissioner Fitzpatrick authorized you to act as designee. Are you prepared to produce in writing that "authorization?" From either of them?

ANSWER: No, there was no written authorization.

5. MDOC Policy No. 15.1, Section VI, Procedure (C)(14) has no mention of a "designee" and neither does attachment "I" (Commissioner's six month review of ad seg. status) which you signed. At the heading of attachment I, it is explicitly addressed: "To: Commissioner, D.O.C." and below your signature are the words, "Signature, Commissioner." I believe Plaintiff Condon's six month review was done erroneously by you. Do you agree?

ANSWER: No. See preceding responses.

6 I'm confident the MDOC policy ad 15.1 that I have is and was the correct policy at the time of Plaintiff Condon's six month review (Sept. 9, 2014). Now, not to disparage your former position of Deputy Commissioner, MDOC, but the retention and lost liberty of any United States citizen (prisoner or no prisoner)in a six footy by ten foot cell 23 out of 24 hours a day for over six months is a serious constitutional matter in this country. This would explain why it is the Commissioner's six monthly review and not a subordinates. Does that sound quite reasonable to you, Ms. Breton?

ANSWER: This interrogatory constitutes a legal argument rather than a request for information, and defendant objects to it on that ground. Without limiting or waiving this objection, defendant states that plaintiff's placement in administrative segregation was a matter that defendant took very seriously.

7. In any event, you did the review and you did it without interviewing inmate Condon, the subject of the Commissioner's review. Since your same letter to Condon states you went to the Warden's office for a "discussion" regarding Condon and Condon's ad seq. cell was no more than 100-150 yards from his office, why didn't you stop in to question Condon or have him called to the no-contact visiting booth to get his side of the situation?

ANSWER: Defendant objects to this interrogatory on the ground that it assumes facts that are not necessarily correct. I do not recall whether I discussed plaintiff's review with the warden in his office or at DOC Central Office in Augusta. I do not usually interview prisoners when I conduct the six-month review.

8. You signed the Commissioner's six month review approving Condon's six month confinement and also approving his continued confinement on Ad. Seg. According to your letter, you based your decisions on the "Warden's opinion" which you took "very seriously." Ms. Breton, the Warden and his designee have their own ultimate decision making review of Condon's Ad. Seg. status at their own level (MDOC 15.1, Sect. VI (C)(4)(6) and (7) along with Section VI of the Ad. Seg. status review minutes and they have denied releasing Condon from Ad. Seg. status since day one. So essentially, Mr. Breton, all you did was just "co-sign" the warden's opinion without doing a Commissioner's review of your own. That's a perfect synopsis of your performance, isn't it?

ANSWER: No, it is not.

9. If the above (Interrogatory No. 8) is not a correct synopsis of "your" six monthly review of administrative segregation status, explain why it is not.

ANSWER: I undertook an independent review.

10. Above your signature where the Commissioner is supposed to sig his six monthly review, just to the right of where you marked "Approved," it is written[1] "Reason" (for the decision). You left that space blank. In other words, you have no reason for your decision. Interrogatory Number 10 queries: what was your reason for not only "approving" Condon's six month confinement, but also approving his continued confinement in a six foot by ten foot cell?

ANSWER: To the extent that this interrogatory is argumentative, defendant objects to it. Without limiting or waiving this objection, defendant states: My decision was based on information provided by and a discussion with the warden.

11. You stated in that same September 30, 2014 letter[2] to Condon that you signed the review after a discussion with Warden Bouffard about whether or not he believed inmate Condon was a serious threat. Not counting your travel time to and from MSP Ms. Breton, how much time would you estimate you spent performing Condon's six monthly review?

ANSWER: See objection to Interrogatory 7. I do not recall how long I spent on this review.

12. Lieutenant Lidia Burnham was head of the inner premium security (IDS) at MSP at all times relevant here. Did you in the course of your six monthly review of inmate Condon's administrative segregation confinement, interview Lt. Burnham regarding the then 28 week old "IPS investigation" into Condon?

---

[1] A copy of that document can be viewed. Plaintiff's November 19, 2016, "Opposition to Defendant's Motion to Dismiss" (Appendix 'G').
[2] Ibid. (Appendix 'J').

4

ANSWER: I don't recall whether I spoke with Lt. Burnham during the course of this review.

13. If you answered Interrogatory No. 12: "yes," what information did she give you?

    ANSWER: See previous response.

14. If you didn't interview Lt. Burnham or anyone affiliated with the 28 week old investigation of Condon, why didn't you?

    ANSWER: I don't recall whether or not I interviewed Lt. Burnham.

15. Did the "IPS investigation" which the "pending the results of" was continually being used as the reason Condon was being retained on Ad. Seg. status by the various administrative segregation review (ASR) Boards . . . ever reach a conclusion?

    ANSWER: To the extent that this interrogatory misstates the facts, defendant objects to it. Without limiting or waiving this objection, defendant states: I don't know.

16. If the "IPS Investigation" did reach a conclusion regarding the alleged threats Condon made during a "cell rap session." What was it?

    ANSWER: See previous response.

17. If they did reach a conclusion finally, when was it concluded?

    ANSWER: See previous response.

18. Did it ever occur to you when you were doing the six month review of Condon that a 28 week or 200 day old investigation into whether or not an inmate said something threating during an inmate cell rap session just might be a ruse, a tactic, or better said, a pretext to hold Condon on Ad. Seg. status indefinitely?

    ANSWER: See response to Interrogatory 15.

19.  Has Condon ever been convicted of an assault on a prison staff member during his 35 straights years in prison?

ANSWER: I don't know.

20.  Why didn't your co-defendants Ross and Bouffard, bring formal disciplinary proceedings against Condon pursuant to MDOC Policy No. 20.1 on the charges of "threatening"? (prisoner discipline)

ANSWER: I don't know.

21.  Are you planning to call any witnesses to the proposed trial date of March 6, 2018, regarding this civil rights suit plaintiff Condon has brought against you and your co-defendants?

ANSWER: I am advised that my attorney will disclose the identities of witnesses to be called at trial pursuant to the court's pretrial order.

22.  If you are planning to call a witness or witnesses, please name them.

ANSWER: See previous response.

23.  Are your co-defendants planning to call any witness to this proposed trial date of March 6, 2018?

ANSWER: See response to Interrogatory 21.

24.  If your co-defendants are planning to call witnesses, please name them.

ANSWER: See response to Interrogatory 21.

25.  What "evidence are you and your co-defendants planning to bring to trial to support your allegations of threats Condon allegedly made?

ANSWER: I am advised that defendants will introduce testimony and documentary evidence concerning the Department's investigation into plaintiff's threat to kill a member of the prison staff as well as information about plaintiff's history of threats and violence.

26. How many other "Commissioner's" six monthly review of Ad. Seg. status "have you stepped in" to perform on Maine State Prison Inmate since July of 2010?

ANSWER: I don't know.

27. A small locked briefcase containing a "dossier" on inmate Condon accompanied him on this transfer trip by van to Florida. This dossier portraying inmate Condon was only to be opened by the receiving authorities of the Florida Department of Corrections (FDOC). It contained affirmative and conclusive language of guilt regarding Condon's (alleged) conduct at M.S.P. such as:

> (A) "He was on segregated status due to his recent threats he made to staff and another inmate."
> (b) (He was) "a management problem due to assaultive behavior towards staff and other inmates."[3]

As previously stated herein, inmate Condon never had any formal disciplinary proceedings brought against him that led to a due process finding of guilt pursuant to MDOC Policy No. 20.1 (Prisoner Discipline). Ms. Breton as acting Deputy Commissioner of the MDOC is at all times relevant here, why did you and your co-defendants Ross and Bouffard write, or allow to be written, this false and misleading conclusions of guilt language that was used to portray MSP inmate Condon to the Florida Dept. of Corrections?

ANSWER: Defendant objects to this interrogatory on the grounds that it states facts and legal conclusions that are incorrect. Without limiting or waiving this objection, defendant assumes that the "dossier" referred to by the plaintiff is the Interstate Compact information package sent by the Maine DOC to the Florida DOC. Defendant was not involved in the preparation of that package.

---

[3] See Plaintiff's "Opposition to Defendant's Motion to Dismiss," Appendix 'A.'

7

28. Are you aware, or were you aware, that due to the false and misleading language (above, #27), the Florida authorities subjected Condon to a further 438 days of punitive segregated confinement? (this 438 on top of the 235 you and your co-defendants subjected him to, made a grant total of 673 days or nearly two years out of plaintiff's life at his then ages of 66 and 67).

ANSWER: To the extent that the interrogatory states that the Department submitted false and misleading information to the Florida DOC, defendant objects to it. Without limiting or waiving this objection, defendant states that neither she nor any other MDOC official was involved in the decision of the Florida facility as to plaintiff's custody level.

29. Do you feel your shallow, hollow (and what plaintiff personally feels was an empty-headed) performance of the very serious matter of the Commissioner's six monthly review (that you were not supposed to do in the first place) could harm your career if this matter be publicized?

ANSWER: Defendant objects to this interrogatory on the ground that it is argumentative and insulting.

Signed under the penalties of perjury this 20th day of October, 2017.

_____
Jody Breton

As to Objections:

_____
James E. Fortin
Assistant Attorney General

8