UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| JOHN JAY CONDON, | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | Civil No. 1:16-cv-00372-JAW |
| | ) | |
| RODNEY BOUFFARD, et al., | ) | |
| | ) | |
| Defendants | ) | |

**DEFENDANTS' REPLY TO PLAINTIFF'S OPPOSITION TO MOTION FOR SUMMARY JUDGMENT**

Pursuant to Local Rule 7(c), defendants submit this reply to plaintiff's opposition to defendants' motion for summary judgment.

In his opposition, plaintiff John Condon ("Condon") claims that defendants violated the procedures for review of administration segregation placement contained in the Department's administrative segregation policy. Because Condon's claims are for violations of rights secured by the Constitution, his reliance on the state regulation is misplaced.

In *McGuiness v. DuBois*, 75 F. 3d 794, 798 (per curiam), the First Circuit Court of Appeals noted that a state court's interpretation of a prison discipline regulation has no application in an action under § 1983 claiming a deprivation of federal constitutional rights. It quoted *Coyne v. City of Somerville*, 972 F. 2d 440, 444 (1st Cir. 1992), which stated, "It is bedrock law in this circuit, however, that violations of state law – even where arbitrary, capricious or undertaken in bad faith – do not, without more, give rise to a denial of substantive due process under the U.S. Constitution." Thus, Condon's claim that defendants violated his

constitutional rights by failing to adhere to the Department's administrative segregation policy is without merit.

Condon is also incorrect in his assertion that his placement in administrative segregation gave rise to due process requirements. With regard to non-disciplinary placement in administrative segregation, the Supreme Court has recognized that such placement "may be used to protect the prisoner's safety, to protect other inmates from a particular prisoner, to break up potentially disruptive groups of inmates, or simply to await later classification or transfer…Accordingly, administrative segregation is the sort of confinement that inmates should reasonably anticipate receiving at some point in their incarceration." *Hewett v. Helms*, 459 U.S. 460, 469-470 (1983).[1]

Condon repeatedly emphasizes that he was never tried or convicted or subjected to a formal disciplinary hearing for threatening staff at the prison.  A criminal conviction or even the finding of a disciplinary violation were not necessary for defendants to place and retain Condon in administrative segregation; they had credible evidence of his threat to prison security. Condon's own arguments support both the defendant's conclusion that Condon was a danger to staff and other prisoners and their decision to keep him segregated until he could be transferred to a different jurisdiction.  He affirms that he murdered his cell mate while in federal custody in 1993 but goes further, stating that he purposely admitted this act to MSP authorities as a "wedge" to ensure he was not required to occupy a cell with another prisoner and would continue to enjoy the "luxury" of a single cell..  See, Declaration in Opposition to Motion for Summary

---

[1] *Hewett*, decided before *Sandin v. Conner*, 515 U.S. 472 (1995) found that mandatory language in the state's administrative segregation policy created a protected liberty interest; even then, the process required to protect that interest was an "informal, nonadversary review." *Hewett* at 472.  That standard was exceeded by the process afforded Condon in this case.

Judgment, ECF Document 89, ¶¶ 12-13.  Thus, by his own admission, Condon intentionally attempted to create the impression that he presented a danger to others in the prison.

Condon also argues that the defendants were responsible for Condon's placement in segregated confinement once he reached Florida by their statements in a "dossier" sent with Condon when he was transferred. Condon has not effectively contradicted the fact established by the defendants that, once Condon was transferred, they had no say in classification or housing decisions by Florida prison authorities.  Even if that were the case, however, Condon's description of the conditions in the close management unit at the Florida prison does not make out an "atypical and significant hardship." *See*, Condon Declaration, (ECF Document 25). Moreover, Florida Department of Corrections procedures governing placement decisions and reviews for the close management unit there surpass any applicable due process requirements. *Id.*, Attachment A (ECF Document 25-1, p. 4.)

Finally, although Condon has shown that defendants were served with (and therefore were presumably aware of) his state court petition for judicial review in August of 2014 before he was transferred to Florida in October, he has presented no evidence to contradict defendant Bouffard's testimony that the decision to transfer Condon was made in May of 2014, several months before the petition was filed and that, therefore, retaliation for filing the petition was not the motive behind requesting his transfer.

For these reasons, defendants request that the court grant their motion for summary judgment.

April 26, 2018                              /s/ James E. Fortin
                                                         James E. Fortin
                                                         Assistant Attorney General

Office of the Attorney General
Six State House Station
Augusta, ME 04333-0006
Tel. (207) 626-8800

Certificate of Service

      The undersigned hereby certifies that he served the above document by first class mail to the following:

John J. Condon
Zephyrhills Correctional Institution
2739 Gall Boulevard
Zephyrhills, Florida 33541

April 26, 2018                                      /s/ James E. Fortin
                                                          James E. Fortin
                                                          Assistant Attorney General